IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEVIN B. SAPP and JAIME HOPPER,

    Plaintiffs,

v.

INDUSTRIAL ACTION SERVICES, LLC
and RELADYNE, LLC,

    Defendants.

Civil Action No. 19-912-RGA

MEMORANDUM OPINION

Matthew F. Lintner, Albert J. Carroll, MORRIS JAMES LLP, Wilmington, DE; Matthew J. Mussalli, Kelsey D. Ratz, THE MUSSALLI LAW FIRM, The Woodlands, TX, Attorneys for Plaintiffs.

David B. Anthony, BERGER HARRIS LLP, Wilmington, DE; Edward D. Shapiro, Irving M. Geslewitz, MUCH SHELIST, P.C., Chicago, IL, Attorneys for Defendants.

May 29, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is the Report & Recommendation ("Report") of a United States Magistrate Judge. (D.I. 50). It addresses Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. (D.I. 35). Defendants filed objections to the Report. (D.I. 52). Plaintiffs responded to Defendants' objections. (D.I. 54).

**I.     BACKGROUND**

Plaintiffs sued Defendants, the Buyer of the assets of their business and its parent company, for breach of contract, tortious interference, and declaratory judgment with respect to Earn Out Consideration under an Asset Purchase Agreement ("APA"). (D.I. 34). Section 2.6(b) of the APA offered Plaintiffs a chance of achieving Earn Out Consideration following the closing of the transaction based on attaining a defined Buyer EBITDA Target up to a maximum of $5 million. (D.I. 34-1, Ex. A at 9). Plaintiffs allege that Defendants intentionally ran the business to lower EBITDA and avoid paying any Earn Out Consideration, in violation of their good faith and fair dealing obligations. (D.I. 34).

Section 2.6(d) of the APA provides a mechanism for Plaintiffs to object to an annual Earn Out Statement prepared by Defendants, in accordance with the dispute resolution mechanism set forth in Section 2.3(e). (D.I. 34-1, Ex. A at 9). Section 2.3(e) of the APA provides that disputed matters not mutually resolved by the parties are to be submitted to an accounting firm:

> If a Notice of Disagreement is received by Buyer in a timely manner, then the Statement (as revised in accordance with this sentence) will become final and binding upon Buyer and Sellers on the earlier of (A) the date Buyer and Representative resolve in writing any differences they have with respect to the matters specified in the Notice of Disagreement, or (B) the date any disputed matters are finally resolved in writing by the Accounting Firm. During the 60-day period following the delivery of a Notice of Disagreement, Buyer and Representative shall meet and work in good faith to resolve any differences that they may have with respect to the matters specified in the Notice of

>	Disagreement. During such period, the Sellers shall give Buyer and its auditors, accountants and advisors reasonable access to all working papers and other documents of the Sellers and the [sic] its auditors, accountants and advisors, to the extent used in connection with the preparation of the Notice of Disagreement. At the end of such 60-day period, Buyer and the Sellers shall submit to an independent accounting firm (the "Accounting Firm") for resolution of any and all matters that remain in dispute and were properly included in the Notice of Disagreement.
>
>	The Accounting Firm will be Ernst & Young or, if such firm is unable and unwilling to act, a nationally recognized independent public accounting firm as shall be agreed upon by the parties. Buyer and the Sellers agree to use commercially reasonable good faith efforts to cause the Accounting Firm to render a decision resolving the matters submitted to the Accounting Firm within 30 days. Judgment may be entered upon the determination of the Accounting Firm in any court set forth in section 11.6. . . .

(*Id.* at 7).

Defendants moved to dismiss this case in favor of arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. (D.I. 35, 36). Plaintiffs argued that the APA merely permits that certain disputes may be addressed by the accounting firm by "expert determination," and that the remainder of any unresolvable APA-related disputes are to be settled in court. (D.I. 38 at 5-13). In his Report, the Magistrate Judge agreed with Plaintiffs and determined that the APA called for an "expert determination" rather than arbitration to resolve narrow categories of disputes. (D.I. 50 at 9-11). The Magistrate Judge found that there was no contractual basis for concluding that the parties had a valid agreement to arbitrate and thus recommends denying Defendants' motion. (*Id.* at 11).

## II.     LEGAL STANDARD

Magistrate Judges have the authority to make recommendations as to the appropriate resolution of a motion to dismiss pursuant to 28 U.S.C. § 636(b)(1)(B). In the event of an objection, this Court reviews the objected-to determinations *de novo*.

3

### III. DISCUSSION

Under Delaware law, "[w]hen interpreting a contract, the role of a court is to effectuate the parties' intent." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). In deciding whether to compel arbitration under the FAA, a court first considers whether there is a valid agreement to arbitrate between the parties. *Andre v. Dollar Tree Stores, Inc.*, 2018 WL 3323825, at *3-5 (D. Del. July 6, 2018). Then, the Court considers whether the merits-based dispute in question falls within the scope of that valid agreement. *See Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014).

#### a. The Parties Have A Valid Agreement To Arbitrate

If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent. *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191 (Del. 1993). Section 2.3(e) of the APA provides that disputed matters not mutually resolved by the parties are to be submitted to an accounting firm, with no express indication of whether the firm is to make an expert determination or to act as an arbitrator.

The report relies heavily on *Penton Bus. Media Holdings, LLC v. Informa PLC*, 2018 WL 3343495 (Del. Ch. July 9, 2018) to conclude that the dispute resolution provision in the APA limits the role of the accounting firm to that of making an expert determination. (D.I. 50 at 6-11). In *Penton*, however, the parties' agreement expressly stated that the accounting firm "shall be acting as an accounting expert only and not as an arbitrator." 2018 WL 3343495, at *13. This unequivocal statement demonstrated the parties' clear intent and the Court thus enforced the provision in the agreement that "plainly call[ed] for an expert determination." *Id.* at *16.

As was the case in *Penton*, the parties in other cases relied upon in the Report also explicitly disclaimed the role of an accounting firm as an arbitrator. *See Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co.*, 166 A.3d 912, 931 (Del. 2017); *Ray Beyond Corp. v. Trimaran Fund Mgmt., L.L.C.*, 2019 WL 366614, at *6, *8 (Del. Ch. Jan. 29, 2019). Other cases have also distinguished *Penton* on the basis that in *Penton* the contract contained "expert not arbitrator" language. *See, e.g.*, *Agiliance, Inc. v. Resolver SOAR, LLC*, 2019 WL 343668, at *3 (Del. Ch. Jan. 25, 2019); *see also F.N.B. Corp. v. Mariner Royal Holdings, LLC*, 2020 WL 1475021, at *4-5 (D. Del. Mar. 26, 2020) (finding that where the agreement lacked specific language disavowing arbitration and permitted the accounting firm reasonable access to information, it "more closely resemble[d]" an arbitration provision).

Here, the APA contains no such explicit statement about the role of the accounting firm, which signals caution in relying too heavily on *Penton*. The word "arbitration" is not used in the APA, nor is there any clear reference defining the role of the accounting firm as making an expert determination or conducting an arbitration process.

Where, as here, the writing might be fairly susceptible to more than one meaning, the role of norms in contracting language may be instructive in determining whether the parties have a valid agreement to arbitrate. *See Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co.*, 166 A.3d 912, 920 (Del. 2017). The Report notes that the norm established by the Committee on International Commercial Disputes of the New York Bar Association is that parties use "expert not arbitrator" language when seeking only an expert determination (D.I. 50, at 8), language which is not present in the APA here and suggests that the parties intended to arbitrate.

Further clues about the scope of the APA are offered by its language, in conjunction with prevailing norms of dispute resolution provisions. Section 2.3(e) of the agreement states that the

5

accounting firm's resolution becomes "final and binding." (D.I. 34-1, Ex. A at 7). Empowering a third party with the authority to make a "final and binding" determination is the purpose of arbitration. *See* Restatement (Third) U.S. Law of Int'l Comm. Arb. § 1.1 PFD (2019); *see Viacom Int'l, Inc. v. Winshall*, 2012 WL 3249620, at *11 n.78 (Del. Ch. Aug. 9, 2012) (compiling cases).

The Report compares the language in Section 2.3(c)-(d) of the APA, which relates to resolving disputes over Working Capital Adjustments, to that relating to Earn Out Consideration. (D.I. 50 at 10-11). In the section on Working Capital Adjustments, what may be included in a Notice of Disagreement with a Working Capital Statement is limited to disagreements over GAAP compliance and mathematical errors. (D.I. 34-1, Ex. A at 6). The Report then infers that the parties would have similarly limited the accounting firm's scope of authority regarding Earn Out Consideration, and that this limited scope of authority suggests that the parties intended for the accounting firm to serve solely in the capacity of an expert. (D.I. 50 at 10-11). A different result is counseled, however, by following Third Circuit guidance that when the same term appears in different sections of the agreement and is capitalized in one section but not the other, the non-capitalized term will have its "ordinary, plain meaning." *See Derry Finance N.V. v. Christiana Cos.*, 797 F.2d 1210, 1214 (3d Cir. 1986). The term "Notice of Disagreement" in Section 2.3(d) in reference to the Working Capital Statement is capitalized, but the term "notice of disagreement" with an Earn Out Statement in Section 2.6(d) is lower case. (D.I. 34-1, Ex. A at 7, 9). Giving the plain and ordinary meaning to "notice of disagreement" in Section 2.6(d), and following the method of contract construction employed in *Derry*, it appears that the parties did not intend the reference to be limited in terms of the disputes the notice could raise, unlike in Section 2.3(d), which specifies only certain types of disagreements.

6

Despite the dispute resolution language in the APA indicating that the parties did not intend to limit the role of the accounting firm to that of an expert, the Report concludes that the APA is not an agreement to arbitrate. (D.I. 50 at 11). The Report focuses on several aspects of the APA to reach this conclusion, including the absence of procedural rules or guidance in the APA, and the time limitation provision for dispute resolution. The absence of procedural rules or guidance in the APA, however, does not necessarily create the inference that the proceeding envisioned by the agreement is not a valid arbitration. *See Cornell Univ. v. Illumina, Inc.*, 2018 WL 481782, at *5 (D. Del. Jan. 19, 2018). The APA states, "Buyer and the Sellers agree to use commercially reasonable good faith efforts to cause the Accounting Firm to render a decision resolving the matters submitted to the Accounting Firm within 30 days." (D.I. 34-1, Ex. A at 7). From the 30-day provision, the Report infers that the parties did not intend to vest the Accounting Firm with authority over claims such as Plaintiffs'. (D.I. 50 at 9-10). But given the context in which this provision is placed, I do not think that the time limitation is enough to find that the parties intended only that the accounting firm make an expert determination. Furthermore, the language regarding "commercially reasonable good faith efforts" suggests that this time limit designation accommodates at least some degree of flexibility in delivering the firm's decision.

In his Report, the Magistrate Judge concluded that the APA gives the accounting firm limited authority over earn-out consideration disputes, further supporting his conclusion that the parties do not have a valid agreement to arbitrate. (*Id.* at 10-11). The facts of this case are similar to *Advantage Sales & Mktg., LLC v. USG Cos.*, 2016 WL 2588163 (D. Del. May 4, 2016) (*Advantage Sales I*). In *Advantage Sales I*, the issue was whether revenue from the buyer's pre-existing contracts with overlapping customers should count as revenue for purposes of

7

calculating the earn-out. 2016 WL 2588163, at *1. The agreement there had nearly identical dispute resolution language as here: if the parties "are unable to resolve any disagreement with respect to calculation of Revenue . . ." then the matter "will be referred to the Accounting Firm . . . for final determination." *Id.* As in the instant case, the agreement did not use the word "arbitration." *Advantage Sales I*, No. 15-1225-RGA, D.I. 7-1 at § 1.7. Although the buyer in that case argued that the dispute was not for an accountant to resolve because it was "not a calculation dispute but a dispute over the interpretation of contract terms," this court found the dispute resolution mechanism to be an agreement to "arbitrate" and granted the motion. *Advantage Sales I*, 2016 WL 2588163, at *1-2, citing *TMIP Participants LLC*, 2016 WL 490257, at *9 ("The mere fact that the parties' dispute may require interpretation of contractual terms does not mean the dispute is not arbitrable").

While it is a close call, in sum, I find that the parties have a valid agreement to arbitrate.

### b. The Dispute In Question Falls Within The Scope Of The Arbitration Agreement

Courts have found wide ranges of disputes to be within the scope of an accounting firm's authority to arbitrate by applying a strong presumption in favor of arbitration that "can be overcome only if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *See, e.g.*, *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 44 (3d Cir. 1978); *HBMA Holdings, LLC v. LSF9 Stardust Holdings LLC*, 2017 WL 6209594, at *5 (Del. Ch. Dec. 8, 2017); *TMIP Participants LLC v. DSW Grp. Holding LLC*, 2016 WL 490257, at *8 (Del. Ch. Feb. 4, 2016).

In *Viacom Int'l Inc. v. Winshall*, 72 A.3d 78 (Del. 2013), the Delaware Supreme Court considered whether an arbitration determination should be vacated in part because the arbitrator lacked authority to decide whether a particular issue was arbitrable. The issue was similar to the

one asserted here. The agreement in *Viacom* designated an accounting firm to settle disputes over an earn-out; the issue was whether the consideration of inventory write-down was within the accounting firm's authorization to decide. *Id.* at 79-80. The Court held, "If the subject matter to be arbitrated is the calculation of an earn-out . . . , all issues as to what financial or other information should be considered in performing the calculation are decided by the arbitrator," and are not "gateway" issues for the court. *Id.* at 83-84.

The Report suggests that it is unlikely that an accounting firm would be tasked with resolving Plaintiffs' allegations because this process would demand activity such as document review and witness testimony. But in *Advantage Sales I*, this Court held that the fact that the accounting firm would have to be applying or reviewing contract terms without legal training did not mean that the dispute was not arbitrable. 2016 WL 2588163 at *2; *see also TMIP Participants LLC*, 2016 WL 490257, at *12 ("Delaware courts repeatedly have recognized that arbitrators, even those without legal training, may be called upon to interpret the parties' agreement in order to render a decision in the arbitration."). The designated Accounting Firm here is Ernst & Young, a Big Four accounting firm undoubtedly familiar with sophisticated business practices and possessing the skills to assess Plaintiffs' challenges to Defendants' operational decisions. *See Viacom Int'l, Inc.*, 2012 WL 3249620, at *15 (I do not accept . . . that the Resolution Accountants had less authority because they did not go to law school . . . Sophisticated accounting firms like BDO – the Resolution Accountants here – have access to lawyers").

Plaintiffs' allegations of unreasonable business practices resulting in a deflation of revenue are similar to those in *USG Cos. v. Advantage Sales & Mktg., Inc.*, 2018 WL 3117545 (D. Del. June 25, 2018) (*Advantage Sales II*), which arose after the parties had proceeded to

9

arbitration and the seller lost. 2018 WL 3117545 at *2. There, the seller claimed that the buyer engaged in unreasonable business practices in breach of the contract and the covenant of good faith and fair dealing, resulting in an artificial deflation of revenue numbers, thereby negatively affecting the earn-out calculation. *Id.* Pointing out that the seller was "fundamentally challenging the earn-out calculation," the Court found that the dispute fell within the scope of the accounting firm's authority and was thus precluded from judicial review since the seller had not raised the issue during arbitration. *Id.* at *9. Here, Section 2.6(c) of the APA states that the Earn Out Statement sets forth "Buyer's computation of Buyer EBITDA." (D.I. 34-1, Ex. A at 9). The *Advantage Sales II* analysis is directly comparable to Plaintiffs' allegations, as "each claim of operational wrongdoing allegedly reduced revenues during the measurement period and this deflated the earn-out payment." 2018 WL 3117545, at *9. In *Advantage Sales II* and here, the selling party was "fundamentally challenging the calculation of revenue during the earn-out measurement period." *Id.*; *see Blattman v. Siebel*, 2017 WL 1217209, at *6 (D. Del. Mar. 31, 2007); *Duafala v. Globecomm Sys. Inc.*, 91 F. Supp. 3d 330, 337 (E.D.N.Y. 2015).

In sum, I find that the parties' dispute falls within the scope of the arbitration agreement.

### c. Tortious Interference

The Magistrate Judge held that Plaintiffs properly pleaded tortious interference. (D.I. 50 at 13-14). Defendant's objection is a footnote, which purports to include about eight pages of the earlier briefing. That is an insufficient objection. Therefore, there is no challenge to the Magistrate Judge's conclusion on this issue.

## IV. CONCLUSION

For the reasons discussed above, I will sustain Defendants' objections as they relate to arbitration. I note that the amount in dispute here was originally alleged to be $436,600.50.

10

(D.I. 1 at 20).  The lawsuit is now in its third venue, and I am sending the heart of it to a fourth. But the fourth venue (unlike the present venue) promises a quick and relatively inexpensive resolution.  Thus, because I find that the underlying dispute is arbitrable, I stay proceedings pending arbitration of the issues raised in the Second Amended Complaint.[1]  A stay will lead to, at least, simplification; nothing of substance in the case has occurred; and I do not see the brief delay as working any substantial prejudice to Plaintiffs.  Thus, while I will deny Defendants' motion to dismiss, I will stay the case pending the outcome of the arbitration.

       An accompanying order will be entered.

---

[1] Although styled a motion to dismiss, Defendants later agreed that a stay would be the appropriate resolution if I agreed the dispute was arbitrable. (D.I. 50 at 4 n.2).