IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN B. SAPP and JAIME HOPPER,<br><br>               Plaintiffs;<br><br>    v.<br><br>INDUSTRIAL ACTION SERVICES, LLC and RELADYNE, LLC,<br>               Defendants. | Civil Action No. 19-912-RGA |

MEMORANDUM OPINION

Albert J. Carroll, MORRIS JAMES LLP, Wilmington DE; Maureen Farrell, MUERY & FARRELL, P.C., The Woodlands, TX;

    Attorneys for Plaintiffs.

David B. Anthony, BERGER HARRIS LLP, Wilmington, DE; Edward D. Shapiro, Irving M. Geslewitz, MUCH SHELIST, P.C., Chicago, IL;

    Attorneys for Defendants.

May 26, 2022

1

Case 1:19-cv-00912-RGA   Document 95   Filed 05/26/22   Page 2 of 11 PageID #: 2252


**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendants' motion to dismiss and for entry of judgment (D.I. 64), Plaintiffs' motion to vacate arbitration award (D.I. 68), and Defendants' motion to strike (D.I. 83). I have considered the parties' briefing and supplemental letters. (D.I. 64, 67, 69, 74, 79, 83, 88, 91–93). For the following reasons, Plaintiffs' motion to vacate the arbitration award (D.I. 68) is DENIED. Defendants' motion to dismiss and for entry of judgment (D.I. 64) is GRANTED. The motion to strike (D.I. 83) is DISMISSED AS MOOT.

## I.   BACKGROUND

### A. Procedural History

Plaintiffs Kevin Sapp and Jaime Hopper sued Defendants Industrial Action Services, LLC ("IAS") and RelaDyne, LLC in a Texas state court for breach of contract and declaratory relief. (D.I. 1 ¶ 2). Defendants removed the action to federal court in the Southern District of Texas and obtained a transfer to the District of Delaware. (D.I. 1, 17). On May 29, 2020, I stayed proceedings pending arbitration. (D.I. 56). At the arbitration proceedings, Defendant IAS won. (D.I. 64-1, Ex. A). Defendants now seek dismissal of Plaintiffs' complaint and entry of judgment. (D.I. 64). Plaintiffs move to vacate the arbitration award. (D.I. 68). There is an ancillary dispute regarding some of Plaintiffs' declarations. (D.I. 83).

### B. Factual Background

Defendant IAS, a subsidiary of Defendant RelaDyne, purchased Plaintiffs' company pursuant to an Asset Purchase Agreement ("APA"). Under the APA, IAS was to pay "Earn Out Consideration" should the company meet certain goals. Plaintiffs allege, among other things, that IAS breached its obligation of good faith and fair dealing by undermining the company's success. As a result, Plaintiffs were not paid earn out consideration. (D.I. 34 ¶17).

2

The APA has an arbitration provision. (D.I. 55 at 8). Section 2.6(d) provides that disagreements about Earn Out Statements are to be "settled according to the procedures set forth in Section 2.3(e)." (D.I. 34-1, Ex. A). Under Section 2.3(e), if Sapp and Hopper (the "Sellers") send IAS (the "Buyer") a Notice of Disagreement, and the dispute is not resolved within 60 days,

> Buyer and the Sellers shall submit to an independent accounting firm (the "Accounting Firm") for resolution of any and all matters that remain in dispute and were properly included in the Notice of Disagreement.
> The Accounting Firm will be Ernst & Young or, if such firm is unable or unwilling to act, a nationally recognized independent public accounting firm as shall be agreed upon by the parties. Buyer and the Sellers agree to use commercially reasonable good faith efforts to cause the Accounting Firm to render a decision resolving the matters submitted to the Accounting Firm within 30 days. Judgment may be entered upon the determination of the Accounting Firm in any court set forth in section 11.6. The Sellers and Buyer shall bear the costs of resolving any dispute submitted to the Accounting Firm (including the fees and expenses of the Accounting Firm and reasonable attorneys' fees and expenses of the parties) in inverse proportion as the Sellers and Buyer may prevail on matters resolved by the Accounting Firm, which proportionate allocations will also be determined by the Accounting Firm at the time the determination of the Accounting Firm is rendered on the merits of the matters submitted. Notwithstanding the foregoing, Buyer shall bear the fees and disbursements of Buyer's independent auditors, accountants and advisors incurred in connection with their preparation of the Statement and review of any Notice of Disagreement, and the Sellers shall bear the fees and disbursements of the Sellers' independent auditors, accountants and advisors incurred in connection with their review of the Statement and preparation of any Notice of Disagreement.

(*Id.*). After I stayed the proceedings, IAS and Plaintiffs chose EisnerAmper to arbitrate the dispute. (D.I. 69 at 6). During the arbitration, EisnerAmper was acquired by the private equity firm TowerBrook Capital Partners, L.P. (*Id.* at 9). Because non-CPAs cannot own a majority interest in a public accounting firm, EisnerAmper LLC was divided into a public accounting firm and a business advisory group. (*Id.* at 10). The arbitrators rendered services under the business advisory group, not the public accounting firm. On December 17, 2021, the arbitrators issued a decision letter finding that there was no contractual breach by Defendants and that Plaintiffs were "not entitled to any Earn Out Consideration." (D.I. 64-1, Ex. A at 2).

## II. LEGAL STANDARD

"When parties move to confirm or vacate an arbitration award, the court's function in confirming or vacating a commercial arbitration award is severely limited. Arbitration awards are set aside only in very unusual circumstances, and there is a strong presumption in favor of the arbitration award." *Millennium Validation Services, Inc. v. Thompson*, 2006 WL 3159821, *4 (D. Del. 2006) (cleaned up).

Under the Federal Arbitration Act ("FAA"), a federal district court "may" vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

## III. DISCUSSION

### A. The Arbitrators Were Not Evidently Partial

Plaintiffs claim that the EisnerAmper arbitrators were evidently partial to IAS. "In order to show 'evident partiality,' the challenging party must show a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration. 'Evident partiality' is strong language and requires proof of circumstances powerfully suggestive of bias." *Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir.1994) (cleaned up). Plaintiffs complain about a 2019 deal between TowerBrook—the company that acquired EisnerAmper during the 2021 arbitration—and Audax, IAS's ultimate parent.

4

There is no evidence that the companies involved in the deal—TowerBrook and Audax—had any continuing relationship after 2019. Indeed, it is unclear to what extent TowerBrook and Audax even had a relationship during the deal. The news article submitted by Plaintiffs states, "Private equity firm Towerbrook Capital Partners and health system Ascension Health have agreed to purchase the Nashville-based hospice provider Compassus . . . . [Compassus's] previous investors, Formation Capital and Audax Private Equity will no longer hold stakes in Compassus following the transaction's closure." (D.I. 69 at 12). Defendants characterize this as "an acquisition of a portfolio company by one private equity firm (TowerBrook) following a divestment by another (Audax)." (D.I. 75 at 9). At any rate, this news article is hardly evidence from which "a reasonable person would necessarily conclude that [EisnerAmper] was partial to [IAS]." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 254 (3d Cir. 2013).

Plaintiffs argue that there is also actual evidence of partiality: the arbitrators refused to require Defendant RelaDyne to submit relevant documents, and then faulted Plaintiffs for failing to meet their evidentiary burden. (D.I. 79 at 8–9). "But the fact that one party loses at arbitration does not, without more, tend to prove that an arbitrator's failure to disclose some perhaps disclosable information should be interpreted as showing bias against the losing party." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 75 (2d Cir. 2012). Regarding the lack of discovery, RelaDyne was not a party to the arbitration. Although the arbitrators apparently had the authority to request documents from RelaDyne, they chose not to. This is not the sort of "extreme arbitral conduct" that is the focus of FAA § 10. *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008). I find that Plaintiffs have failed to show that the EisnerAmper arbitrators were "evidently partial" to IAS.

5

## B. The Arbitrators Did Not Exceed Their Powers

Plaintiffs argue that the arbitrators exceeded their powers under 9 U.S.C. § 10(4). "[A]rbitrators may exceed their power within the meaning of § 10(a)(4) if they fail to comply with mutually agreed-upon contractual provisions in an agreement to arbitrate." *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011). "A 'trivial departure' from the parties' agreement, however, may not bar enforcement of an award." *R.J. O'Brien & Assocs., Inc. v. Pipkin*, 64 F.3d 257, 263 (7th Cir. 1995) (quoting *Avis Rent A Car Sys., Inc. v. Garage Emps. Union, Loc. 272*, 791 F.2d 22, 25 (2d Cir. 1986)).

The APA provided that a "nationally recognized independent public accounting firm . . . shall be agreed upon by the parties." (D.I. 34-1, Ex. A at 2.3(e)). When the parties signed the Engagement Letter, EisnerAmper LLC was undoubtedly an "independent public accounting firm." Under the APA, that "Accounting Firm" was to render the decision. (*Id.*). The decision was rendered by Eisner Advisory Group, not EisnerAmper LLC. Eisner Advisory Group is not an "independent public accounting firm."

The parties agree that "there was never any intention to appoint a 'nationally recognized independent public accounting firm' to provide audit or attest services." (D.I. 79 at 10). Rather, Plaintiffs argue, "It was the accounting firm's national reputation and ***independence*** that was the point." (*Id.* at 10). In particular, "A public accounting firm is bound by professional obligations, including those promulgated by American Institute of Certified Public Accountants (AICPA). Those AICPA standards are specifically referenced in the Engagement Letter, which includes the 'Independence Rule' under 1.200 of the AICPA Code of Professional Conduct." (D.I. 92 at 3). To be clear, the EisnerAmper Engagement Letter does not mention the Independence Rule. (D.I. 75-1, Ex. 1). The Letter states, "We will perform the Services in accordance with applicable

professional standards, including the Statements on Standards for Forensic Services issued by the AICPA." (*Id.* at 2).

Defendants characterize the EisnerAmper restructuring as a mere technicality. (D.I. 93 at 7). The newly formed Eisner Advisory Group was "simply the continuation of the EisnerAmper LLC management advisory group. It continued to provide the same service under the same trade name (EisnerAmper) with the same arbitrators. Nothing changed other than a structural splitting of the part of the firm performing CPA functions from the part performing management advisory functions . . . ." (D.I. 75 at 18–19).

On this record, it is hard to see how EisnerAmper's restructuring was anything more than a trivial departure from the APA. Plaintiffs do not explain how the AICPA "Independence Rule" impacted the arbitration proceedings or how the restructuring of EisnerAmper, which apparently is now an "alternative practice structure in accordance with the AICPA Code of Professional Conduct," affected the arbitrators' professional and ethical obligations. (D.I. 76-2, Ex. B at 4 of 4). Meanwhile, "the parties interviewed and vetted Nelson Luis and James Agar in [EisnerAmper's] management advisory group, both of whom were skilled and experienced arbitrators in post-M&A disputes" before selecting EisnerAmper. (D.I. 93 at 2). The Engagement Letter specifically designated Luis and Agar as the "Engagement Team" responsible for "all determinations in this matter[.]" (D.I. 75-1, Ex. 1 at 8). It was Luis and Agar who issued the Decision Letter. (D.I. 64-1, Ex. A at 11).

While the facts of this case appear to be unique, "several courts, including the Third Circuit, have recognized that 'harmless' or 'trivial' instances of an arbitrator overstepping his or her authority do not justify vacatur under Section 10(a)(4)." *Stone v. Bear, Stearns & Co.*, 872 F. Supp. 2d 435, 451 (E.D. Pa. 2012), *aff'd*, 538 F. App'x 169 (3d Cir. 2013). In *Bulko v.*

7

*Morgan Stanley DW Inc.*, for instance, Bulko challenged one arbitrator's classification as a "non-public arbitrator." The Fifth Circuit rejected the argument on several grounds, finding that even "[a]ssuming, *arguendo*, that [the arbitrator's] selection contradicted the parties' agreement, it was, at most, a trivial departure not warranting vacatur." 450 F.3d 622, 626 (5th Cir. 2006). The Court reasoned, "Based on her work experience, [the arbitrator] fulfilled the purpose of a non-public arbitrator, which is to serve as an industry insider on the arbitration panel." *Id.* Here, it appears that arbitrators Luis and Agar, working under the auspices of the "Eisner Advisory Group," fulfilled the purpose of providing the non-attest arbitration services described in the Engagement Letter.

Even if Plaintiffs were right and this would not be a trivial departure, Plaintiffs have waived their objections to Eisner Advisory Group's qualifications by failing to raise the issue before the arbitrators rendered a decision. Waiver can occur where a party has "constructive knowledge of an issue" and "fail[s] to raise it during arbitration." *Weber v. PNC Invs.*, 844 F. App'x 579, 584 (3d Cir. 2021).

In this case, Plaintiffs had constructive knowledge of the substitution of Eisner Advisory Group for EisnerAmper LLC over three months prior to the arbitration decision. On August 2, 2021, EisnerAmper sent a form email to the parties announcing a "new investor partner TowerBrook Capital Partners[.]" (D.I. 76-2, Ex. B at 2). The boilerplate at the bottom of the email states:

> "EisnerAmper" is the brand name under which EisnerAmper LLP and Eisner Advisory Group LLC provide professional services. EisnerAmper LLP, a licensed CPA firm, and Eisner Advisory Group LLC practice as an alternative practice structure in accordance with the AICPA Code of Professional Conduct and applicable law, regulations and professional standards.

In addition, on August 25, 2021, Arbitrator Agar emailed the parties:

> Please find attached invoices for your respective clients for services performed from the end of our last invoicing period through August 20. . . . Please note that these instructions have changed since those issued with the last invoices, in conjunction with a recent transaction whereby non-attest services, including those that are the subject of the operative engagement letter are, going forward, provided under the auspices of an EisnerAmper entity named Eisner Advisory Group LLC.

(D.I. 69 at 11). These emails reveal that Eisner Advisory Group had been substituted for EisnerAmper LLC and that the firm was operating as an "alternative practice structure." Plaintiffs ought to have investigated the restructuring and raised their concerns about the arbitrators' qualifications at that point. *See Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 149 (3d Cir. 2015) ("The initial disclosure, deficient as it was, provided enough alarming information to compel the parties to do further research. . . . Or at least such a disclosure should have provoked alarm.").

Only when arbitrators Luis and Agar issued an unfavorable decision letter on December 17, 2021 did Plaintiffs do some "Googling" based on their suspicions that it was a "rigged" game. (D.I. 70 ¶¶ 30–31). "Because [Plaintiffs] took no action until after [they] received a negative result, despite having ample opportunity to object previously, [they have] waived" the claim. *Weber*, 844 F. App'x at 583 (discussing waiver under FAA § 10(a)); *see also Athena Venture Partners*, 803 F.3d at 150 ("This is the paradigmatic case of the 'sore loser,' so to speak, trying for a second bite at the apple—and the exact type of case the law disfavors. A party should not be permitted to game the system by rolling the dice on whether to raise the challenge during the proceedings or wait until it loses to seek vacatur on the issue.").

### C. Tortious Interference Claim Against RelaDyne

The operative complaint contains a count of tortious interference against RelaDyne. (D.I. 34 ¶¶ 53–56). Tortious interference requires a breach of contract. "Plaintiffs concede that if the

9

Award is confirmed and becomes final, the Award is *res judicata* as to the breach of Section 2.6 of the APA." (D.I. 67 at 7). Thus, I will dismiss the tortious interference claim.

### D. Attorneys' Fees and Expenses and Entry of Judgment

The APA provides:

> The Sellers and Buyer shall bear the costs of resolving any dispute submitted to the Accounting Firm (including the fees and expenses of the Accounting Firm and reasonable attorneys' fees and expenses of the parties) in inverse proportion as the Sellers and Buyer may prevail on matters resolved by the Accounting Firm, which proportionate allocations will also be determined by the Accounting Firm at the time the determination of the Accounting Firm is rendered on the merits of the matters submitted.

(D.I. 34-1, Ex. A § 2.3(e)). The arbitrators failed to include an allocation of costs in the decision letter. (D.I. 64-1, Ex. A). IAS subsequently requested that the arbitrators "issue an express determination that all fees and expenses incurred by Buyer are to be borne by Sellers." (D.I. 74-1, Ex. A at 2). In an email dated December 22, 2021, the arbitrators responded, "we believed that our position regarding such allocation was self-evident . . . . Regardless, . . . we thought it appropriate to clarify, for the avoidance of doubt, that our Decision Letter is properly read to convey the understanding that such expenses are to be borne, in their entirety, by the Sellers as non-prevailing party, as Buyer's position was fully sustained." (D.I. 74-3, Ex. C).

Plaintiffs argue that the December 22 email is improper under the doctrine of *functus officio*. (D.I. 67 at 9). In the Third Circuit, "once the arbitrator decides an issue, the *functus officio* doctrine prohibits him from revising that decision without the parties' consent. He can decide other issues submitted by the parties, correct clerical errors, and even clarify his initial decision—but nothing more." *Verizon Pennsylvania, LLC v. Commc'ns Workers of Am., AFL-CIO, Loc. 13000*, 13 F.4th 300, 303–04 (3d Cir. 2021). Arbitrators are "entitled to clarify" awards when the award "leaves doubt whether the submission has been fully executed." *Id.* at 307 (citations omitted).

I do not think that the arbitrators were reconsidering the merits of matters already decided in the December 22 email. It is either a clarification of the initial award, as the email itself suggests and Defendants argue, or a decision regarding another portion of the APA, which was properly before the arbitrators. Thus, the cost allocations are not barred by *functus officio*.

I also reject Plaintiffs' argument that Defendants have waived their ability to petition this court for fees and expenses because they did not present evidence of these costs to the arbitrators. (D.I. 67 at 12–13). Defendants did not need to present this evidence because the arbitrators were only responsible for the allocation of costs between the parties—something which logically flows from the arbitrators' decision itself—not the amount of reasonable fees and expenses.

The APA gives the District of Delaware jurisdiction to enter judgment upon the Accounting Firm's decision. (D.I. 34-1, Ex. A §§ 2.3(e), 11.6). Accordingly, I will enter judgment in favor of Defendants pursuant to 9 U.S.C. § 9 and allow Defendants to petition the Court for its fees and expenses.

### E. Plaintiffs' Supplemental Declarations

Plaintiffs have filed supplemental declarations of Kevin Sapp and Jaime Hopper in support of their reply brief for their motion to vacate the arbitration award. (D.I. 80, 81). Defendants move to strike both declarations as well as a portion of Plaintiffs' reply brief. (D.I. 83). Because I agree with Defendants regardless of the supplemental declarations, Defendants' motion to strike is dismissed as moot.

### IV.   CONCLUSION

An appropriate order will issue.