IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| KEVIN B. SAPP and JAMIE HOPPER,<br><br>Plaintiffs,<br><br>v.<br><br>INDUSTRIAL ACTION SERVICES, LLC and RELADYNE, LLC,<br><br>Defendants. | Civil Action No. 19-912-RGA |

MEMORANDUM OPINION

Joseph B. Cicero, Ryan M. Lindsay, Thomas A. Youngman, CHIPMAN BROWN CICERO & COLE, LP, Wilmington, DE; Maureen Farrell, Adam Muery, MUERY, FARRELL & KELLY PC, Austin, TX,

    Attorneys for Plaintiffs.

David B. Anthony, BERGER MCDERMOTT LLP, Wilmington, DE; Edward D. Shapiro, Irving M. Geslewitz, MUCH SHELIST, P.C., Chicago, IL.

    Attorneys for Defendants.

July 17, 2024

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendants' Motion to Dismiss Counts I and III of Plaintiffs' Third Amended Complaint. (D.I. 119). I have considered the parties' briefing. (D.I. 120, 123, 125). At my request, the parties submitted supplemental letter briefing on whether Defendant RelaDyne was bound by the Asset Purchase Agreement ("APA") at the core of this case. (D.I. 128, 129).

## I. BACKGROUND

The Third Amended Complaint (the "TAC") (D.I. 118) is the operative complaint. The present action arises out of the sale of two companies, Industrial Action Services, Inc. and IAS Canada, Inc (collectively, the "Acquired Companies"). (*Id.* ¶ 1).

The Acquired Companies offered oil flushing and chemical cleaning services. (*Id.* ¶ 18). Plaintiff Kevin B. Sapp was the owner and CEO and Plaintiff Jamie Hopper was an officer of the Acquired Companies. (*Id.* ¶¶ 18–19). Defendant RelaDyne, LLC approached Sapp in 2015, seeking to purchase the Acquired Companies. (*Id.* ¶ 22). This proposal came after RelaDyne acquired Turbo Filtration Corporation ("TFC"), a company that provided similar services to the Acquired Companies, in 2014. (*Id.*). The parties executed the APA on January 29, 2016. (*Id.* ¶ 23; D.I. 123-1, Ex. A). Days before the transaction was executed, Defendant Industrial Action Services, LLC ("IAS") was created by RelaDyne as a new subsidiary to purchase the Acquired Companies on RelaDyne's behalf. (D.I. 118 ¶ 23). The consideration Plaintiffs received included an immediate cash payment following closing of the transaction, deferred compensation, stock in RelaDyne, and earn-out payments tied to reaching certain financial targets. (D.I. 123-1, Ex. A § 2). Pursuant to the APA, Plaintiffs also entered into employment

agreements with RelaDyne (the "Employment Agreements") on January 29, 2016.[1] (D.I. 118 ¶ 30).

The APA includes the following provisions:

2.6  Earn-Out Consideration

. . . .

(f)  At any time during the Earn Out Period, in the event of: (i) [IAS's] sale or disposition of substantially all of the Acquired Assets (other than to a Person who is an Affiliate of Reladyne LLC, a Delaware limited liability company, and who assumes in writing the obligation to pay Earn Out Consideration to Sellers as set forth in this Section 2.6); or (ii) IAS and its Affiliates (or any such successor) wholly ceases to conduct the Business of providing oil flushing and chemical cleaning services for a period of greater than 60 days other than due to any act of God or other event or condition outside the reasonable control of IAS and its Affiliates (a "Business Cessation"), then the difference, if any, between (x) the Maximum Earn Out Amount and (y) the aggregate amount of Earn Out Consideration paid prior to such event shall become immediately due and payable by the IAS to the Sellers and, upon payment, IAS's obligations under this Section 2.6 will be satisfied and discharged in full.

(g)  [IAS] assumes an obligation of good faith and fair dealing with respect to the operation of [the business of providing oil flushing and chemical cleaning services, such as on-site fluid purification, system decontamination and condition monitoring services (the "Business")] during the Earn Out Period, agrees to use reasonable efforts to maintain the Business substantially intact and agrees to refrain from taking any action designed to circumvent payment of Earn Out Consideration under this Section 2.6.

. . . .

11.11  No Third Party Beneficiaries. Nothing contained in this Agreement, whether express or implied, is intended, or shall be deemed, to create or confer any

---

[1] The APA references, and incorporates as an exhibit, a "Form of Key Employee Retention Agreement." (*See* D.I. 123-1, Ex. A §§ 6.11(f), 7.1(f); *id.* at 6 of 58). The parties dispute which entity is the employer in the incorporated employment agreement. Defendants argue the employer is RelaDyne, while Plaintiffs argue the employer is IAS. (*See* D.I. 128 at 2; D.I. 129 at 2). Though no exhibits are attached to the TAC, the record contains employment agreements that support both parties' positions. (*See* D.I. 13-2, Ex. B; D.I. 128-1, Ex. C at 89–97 of 188). The TAC states, "Sapp and Hopper entered into employment agreements with RelaDyne on January 29, 2016 . . . . At no time have Sapp or Hopper ever been employed by IAS." (D.I. 118 ¶ 30). I accept the factual allegations of the TAC to be true, as I must. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

right, interest or remedy for the benefit of any Person other than as otherwise provided in this Agreement.

(D.I. 123-1, Ex. A).

Prior to entering the APA, RelaDyne represented to Plaintiffs that "(i) during the Earn Out period RelaDyne would maintain the Business intact and would not impair the [Acquired] Companies such that Plaintiffs would be unable to receive additional and deferred consideration based on the success of the [Acquired] Companies; (ii) if RelaDyne disposed of the [Acquired] Companies or substantially all of the [Acquired] Companies' assets, Plaintiffs would be protected by receiving the full Earn Out payment of $5 million; and (iii) the 'RelaDyne Reliability Services' business was to be fully integrated within the first 100 days post-APA to maximize efficiencies and enhance customer service and overall company performance."[2] (D.I. 123 at 10 (citing D.I. 118 ¶¶ 55–56)).

IAS has since sold or disposed of substantially all of the acquired assets. (*Id.* ¶ 29). No earn-out payments had been paid to Plaintiffs by RelaDyne as of the filing of the TAC. (*Id.* ¶ 30). Plaintiffs raise a fraudulent inducement claim against RelaDyne (Count I), a breach of contract claim against IAC (Count II), an alternative breach of the implied covenant of good faith and fair dealing claim against IAS (Count III), and a tortious interference with contractual relations claim against RelaDyne (Count IV). (D.I. 118 ¶¶ 54–83). The fraudulent inducement and breach of the implied covenant of good faith and fair dealing claims were added in the TAC. Defendants move to dismiss Counts I and III. (D.I. 119).

---

[2] For simplicity, I will refer to the first and second promises as the "Earn-Out Consideration Promises" and the third promise as the "Integration Promise."

## II. LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

Rule 9 adds a heightened pleading standard for allegations of fraud. It states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of

substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). While courts have relaxed the requirements where the factual information is peculiarly within the defendant's knowledge or control, boilerplate and conclusory allegations will not suffice. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). "Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *Id.*

## III. DISCUSSION

### A. Fraudulent Inducement

#### 1. Claim Duplicativeness

Defendants argue that Plaintiffs' fraudulent inducement claim is duplicative of Plaintiffs' breach of contract claim. (D.I. 120 at 10–12). The core of the parties' dispute is whether the contract and fraud claims can be duplicative even with RelaDyne's status as a non-party to the APA. (D.I. 123 at 9–10; D.I. 125 at 2–5).

"Delaware law holds that a plaintiff cannot bootstrap a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations." *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010) (quoting *Iotex Commc'ns, Inc. v. Defries*, 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998)) (cleaned up). "A fraud claim that arises from the same facts as an accompanying contract claim, seeks identical damages, and does not allege a breach of any duty collateral to or independent of the parties' agreements is subject to dismissal as redundant of the contract

claim." *Cronos Grp. Ltd. v. XComIP, LLC*, 64 N.Y.S.3d 180, 186 (N.Y. App. Div. 2017) (collecting cases).³

"[A] fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable." *Richbell Info. Servs. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575, 589 (N.Y. App. Div. 2003). However, "where the alleged misrepresentation is simply a representation by a non-party that the party will in fact perform under the contract (i.e., a representation made on behalf of the contracting party), courts have found fraud claims to be duplicative, even as against the non-party." *Exch. Listing, LLC v. Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 158 (S.D.N.Y. 2023). "[I]n cases allowing fraudulent inducement claims to move forward against non-parties to the contract where they might otherwise be duplicative of a breach claim against a contracting party, the alleged misrepresentation must be distinct from merely representing the party's intent to perform under the contract." *Id.*

As an initial matter, there is no dispute that RelaDyne is not a party to the APA. (*See* D.I. 128 at 1; D.I. 129 at 1). The parties do disagree, however, over whether RelaDyne is a third-

---

³ The parties agree that Delaware law governs Plaintiffs' fraudulent inducement claim. (D.I. 120 at 12 n. 3; D.I. 123 at 10 n. 3). Neither party identifies any cases applying Delaware law, nor am I aware of any, that address the exclusion of non-parties from the bootstrapping rule. (*See* D.I. 123 at 10 n. 3; D.I. 125 at 2 n. 1). Plaintiffs cite to New York case law on the basis that, because the elements of a fraud claim are substantively similar under Delaware and New York law, Delaware courts would adopt a similar doctrine. (D.I. 123 at 10 n. 3 (citing *Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1064 (Del. Ch. 2004); *Gao v. JPMorgan Chase & Co.*, 2015 WL 3606308, at *4 (S.D.N.Y. June 9, 2015))). Defendants also cite to New York case law, but suggest Delaware courts might instead adopt the "gist of the action" doctrine. (D.I. 125 at 2 & n. 1 (citing *Vives v. Rodriguez*, 849 F. Supp. 2d 507, 521 (E.D. Pa. 2012); *Williams v. Hilton Group PLC*, 93 F. App'x 384, 387 (3d Cir. 2004)); *see eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002) ("To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral. . . . A claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." (cleaned up))). As the parties mainly cite and discuss New York cases, I will focus my analysis on New York case law. I note that I would likely reach the same conclusion under the "gist of the action" doctrine.

7

party beneficiary to the contract. (*See* D.I. 128 at 2; D.I. 129 at 1). Defendants point to various sections of the APA and Employment Agreements to suggest RelaDyne qualifies as a beneficiary. (*See* D.I. 129 at 1–3). The express terms of the "No Third Party Beneficiary" clause, however, are a sufficient basis to establish at the motion-to-dismiss stage that RelaDyne is not a beneficiary.

I nevertheless agree with Defendants that the fraudulent inducement claim is duplicative of the breach of contract claim, at least with respect to the Earn-Out Consideration Promises. The sole difference between RelaDyne's promises and the APA provisions is the entity involved—RelaDyne or IAS. These promises/provisions otherwise impose identical duties and serve the same purpose of preventing Defendants from impairing Plaintiffs' ability to earn additional consideration provided for under contract. (*Compare* D.I. 123 at 10 *with* D.I. 123-1, Ex. A § 2.6(f)–(g)). With the added context that IAS is a wholly owned subsidiary of RelaDyne created shortly before the APA's execution for the sole purpose of taking over the Acquired Companies, I can only infer that RelaDyne's promise was made as a non-party on behalf of the contracting party, IAS. *See Exch. Listing*, 661 F. Supp. 3d at 159 ("A cursory review of the cause of action makes it apparent that the claim is simply a means of repackaging the breach of Oral Contract claim against Inspira, and identifies no separate harm caused by Hayon nor any statements made by Hayon in an individual capacity."). I conclude that the fraudulent inducement claim, as it relates to the Earn-Out Consideration Promises, is duplicative of the breach of contract claim.

I do not reach the same conclusion with respect to the Integration Promise.[4] The APA contains no mention of the future integration of the RelaDyne Reliability Services business. I therefore turn to Defendants' other arguments, as they relate to the Integration Promise.

### 2. Rule 9(b)

Defendants argue that Plaintiffs' fraudulent inducement claim fails to meet the heightened pleading standard required by Rule 9(b). (D.I. 120 at 16).

The TAC provides only boilerplate allegations that RelaDyne made a promise to integrate its subsidiaries. (*See, e.g.*, D.I. 118 ¶ 56 ("Before entering into the APA, RelaDyne represented to Plaintiffs that RelaDyne's 'RelaDyne Reliability Services' business was to be fully integrated within the first days of execution of the APA.")). These allegations do not "provide the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington*, 114 F.3d at 1422). Nor does the TAC otherwise "inject precision or some measure of substantiation" regarding the circumstances of the fraudulent representation.

In addition, the TAC fails the pleading requirements for claims based on statements of future intent. "Generally, prior oral promises or statements of future intent do not constitute false representations of fact that would satisfy the first element of fraudulent misrepresentation." *MicroStrategy Inc. v. Acacia Rsch. Corp.*, 2010 WL 5550455, at *15 (Del. Ch. Dec. 30, 2010) (cleaned up). "As such, prior oral promises or statements of future intent can be 'fraudulent

---

[4] It is unclear from the TAC whether this promise should be considered part and parcel with the Earn-Out Consideration Promises. (*See, e.g.*, D.I. 118 ¶¶ 32, 43, 56). As I must view the facts in the light most favorable to Plaintiffs, I interpret the Integration Promise as a separate promise that may serve as an independent basis for a fraudulent inducement claim.

misrepresentations' sufficient to form the basis of a fraudulent inducement claim only where the Complaint alleges particularized facts that allow the Court to infer that, at the time the promise was made, the speaker had no intention of keeping it." *Id.*

The TAC is devoid of allegations regarding RelaDyne's intent at the time the representation was made. The only mentions of RelaDyne's intentions regarding integration of its subsidiaries are directed towards RelaDyne's state of mind after the APA's execution. (*See, e.g.*, D.I. 118 ¶¶ 32, 41–42). These allegations generally suggest that integration was indeed Defendants' initial plan. (*See id.* ¶ 32 ("Only a few months after IAS and Plaintiffs entered into the APA, RelaDyne, Inc., an upstream owner of RelaDyne and IAS, was purchased by a private investment firm, Audax Group. . . . It is around this same time that RelaDyne decided not to integrate its related subsidiaries as promised prior to the APA."); *id.* ¶ 42 ("Scott Hill stated to Sapp that the integration of IAS into the previously planned RRS structure was proving to be very challenging . . . .")).

Plaintiffs point to a preexisting agreement between RelaDyne and third-party Hydralube to allege, "RelaDyne knew that the [Acquired] Companies could not bid on hydraulic system cleaning jobs after the acquisition, meaning that RelaDyne could not maintain the Business intact after the acquisition and that the RelaDyne business could not be fully integrated." (D.I. 123 at 15). It is unclear how the Hydralube Agreement offers any insight into RelaDyne's intent towards integrating its subsidiaries. The relevant allegations in the TAC and discussion in Plaintiffs' briefing appear to focus on the agreement's impact on the Earn-Out Consideration Promises. (*See generally* D.I. 123 at 13–15; D.I. 118 ¶¶ 33, 55–56). The TAC fails to provide a basis from which to infer Defendants' lack of intention to adhere to its promise to fully integrate its subsidiaries.

For the reasons stated, I will dismiss Count I of the TAC.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants contend Plaintiffs' breach of the implied covenant of good faith and fair dealing claim should be dismissed as duplicative of Plaintiffs' breach of contract claim. (D.I. 120 at 19–20). Plaintiffs argue their implied covenant claim may be pled in the alternative to its contract claim. (D.I. 123 at 19).

"Under Delaware law, an implied duty of good faith and fair dealing is interwoven into every contract." *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007). "The implied covenant of good faith and fair dealing involves . . . inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010). "To sufficiently allege a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) a specific obligation implied in the contract, (2) a breach of that obligation, and (3) resulting damages." *OC Tint Shop, Inc. v. CPFilms, Inc.*, 2018 WL 4658211, at *4 (D. Del. Sept. 27, 2018). "Where a plaintiff has failed to identify a gap in the contract, merely repeating the defendant's allegedly improper acts or omissions already the subject of a separate breach of contract claim is insufficient to support a claim for breach of the implied covenant of good faith and fair dealing." *Haney v. Blackhawk Network Holdings, Inc.*, 2016 WL 769595, at *9 (Del. Ch. Feb. 26, 2016).

Plaintiffs concede that "a party may not plead, as an alternative to its breach of contract claim, a breach of the implied covenant that is based on the same conduct giving rise to its breach of contract claim." (D.I. 123 at 19–20 (citing *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *4–5 (Del. Ch. Jan. 30, 2015)). Plaintiffs nevertheless

11

argue, "A plaintiff may, however, plead a breach of the implied covenant in addition to a breach of contract claim—when the relevant contract does not authorize the actions giving rise to the implied covenant claim and the allegations supporting the implied covenant claim differ from those supporting the breach of contract claim." (*Id.* at 20 (citing *Bonham v. HBW Holdings, Inc.*, 2005 WL 3589419 (Del. Ch. Dec. 23, 2005); *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 WL 5309477, at *1 (Del. Super. Ct. Oct. 25, 2018))).

I am unconvinced that Plaintiffs' breach of the implied covenant of good faith and fair dealing claim relies on different factual allegations than their breach of contract claim. In the TAC, Plaintiffs explain that the implied covenant claim is based on IAS's "bad faith and intentional avoidance of the express contractual requirements of the APA." (D.I. 118 ¶ 78). The claim is, at its core, based on the contract terms at issue in the breach of contract claim.

Plaintiffs propose two implied contract terms: "(a) IAC and TFC did not integrate the RelaDyne Reliability Services unit post-closing, and (b) other RelaDyne subsidiaries and affiliates were allowed to compete with IAS' existing customer relationships post-closing." (D.I. 123 at 19 (citing D.I. 118 ¶¶ 31, 38–41)). Plaintiffs argue, "None of these allegations concern Defendants' operation of the Business post-closing, so they are not covered by the 'good faith' obligations in Section 2.6(g)." (*Id.*). Plaintiffs' position is perplexing, as the proposed implied terms appear inherently related to Defendants' post-closing business operation decisions. I agree with Defendants that Plaintiffs' breach of implied covenant claim is duplicative of the express good faith and fair dealing provision of the APA.

For the foregoing reasons, I will dismiss Count III of the TAC. I do not grant leave to move to amend the Third Amended Complaint; Plaintiffs have had enough opportunity to bring actionable claims.

## IV. CONCLUSION

An appropriate order will issue.