IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN B. SAPP and JAMIE HOPPER,<br><br>Plaintiffs,<br><br>v.<br><br>INDUSTRIAL ACTION SERVICES, LLC and RELADYNE, LLC,<br><br>Defendants. | Civil Action No. 1:19-cv-00912-RGA |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE JURY DEMAND AND OPENING BRIEF IN SUPPORT OF PLAINTIFFS' CROSS-MOTION, IN THE ALTERNATIVE, FOR AN ORDER DIRECTING A JURY TRIAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 39(b)**

Dated: October 3, 2024

*Of Counsel:*

**MUERY & FARRELL PC**
Maureen Farrell
Adam Muery
6200 La Calma Drive, Suite 100
Austin, TX 78752
(737) 808-0529
maureen@texanlegal.com
adam@texanlegal.com

**CHIPMAN BROWN CICERO & COLE, LLP**
Joseph B. Cicero (#4388)
Ryan M. Lindsay (#6435)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
cicero@chipmanbrown.com
lindsay@chipmanbrown.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

                                                  **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................1

SUMMARY OF ARGUMENT ...............................................................................................3

ARGUMENT.......................................................................................................................4

      I.     LEGAL STANDARD TO DEMAND A JURY TRIAL. ........................................4

      II.    PLAINTIFFS' SECOND AMENDED COMPLAINT RAISED A NEW ISSUE OF FACT, REVIVING PLAINTIFFS' RIGHT TO DEMAND A JURY TRIAL. ................................................................................................4

      III.   PLAINTIFFS' JURY DEMAND WAS MADE WITHIN 14 DAYS OF THE LAST PLEADING DIRECTED TO THE NEW ISSUE AND WAS THEREFORE TIMELY. .......................................................................................7

      IV.   ALTERNATIVELY, THE COURT SHOULD GRANT A JURY TRIAL UNDER RULE 39(B), GIVEN THE CASE'S COMPLEX PROCEDURAL HISTORY WITH RESPECT TO THE ARBITRATION ISSUE. .............................................................................................................8

CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Ins. Co. v. Kennedy*,
  301 U.S. 389 (1937) .................................................................................................... 8

*Amaco Oil Co. v. Torcomian*,
  722 F.2d 1099 (3d Cir. 1983) ...................................................................................... 9

*Cedars-Sinai Med. Ctr. v. Revlon, Inc.*,
  111 F.R.D. 24 (D. Del. 1986) ...................................................................................... 4

*Container Co. v. Carpenter Container Corp.*,
  9 F.R.D. 261 (D. Del. 1949) ................................................................................. 8, 11

*Cousins v. Goodier*,
  283 A.3d 1140 (Del. 2022) .......................................................................................... 5

*Cunningham v. Williams Telecomm. Sys., Inc.*,
  928 F. Supp. 110 (D. Mass. 1996) ............................................................................... 9

*Early v. Bankers Life and Cas. Co.*,
  853 F. Supp. 268 (N.D. Ill. 1994) .................................................................. 3, 4, 7, 11

*Fed. Deposit Ins. Corp. v. Cafritz*,
  770 F. Supp. 28 (D.D.C. 1991) .................................................................................. 10

*Fort Wash. Res., Inc. v. Tannen*,
  853 F. Supp. 341 (E.D. Pa. 1994) ................................................................................ 9

*Guajardo v. Estelle*,
  580 F.2d 748 (5th Cir. 1978) ....................................................................................... 5

*Haven v. Polska*,
  215 F.3d 727 (7th Cir. 2000) ....................................................................................... 7

*ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc.*,
  249 F. Supp.2d 622 (E.D. Penn. 2003) ...................................................................... 10

*In re Inacom Corp.*,
  2005 WL 2148563 (D. Del. Sept. 6, 2005) .................................................................. 9

*Kalmanovitz v. G. Heileman Brewing Co., Inc.*,
  610 F. Supp. 1319 (D. Del. 1985) ............................................................................... 8

|  | **Page(s)** |
|---|---|

*Lanza v. Drexel & Co.*,
   479 F.2d 1277 (2nd Cir. 1973) .................................................................................... 5, 6

*McCarthy v. Bronson*,
   906 F.2d 835 (2d Cir. 1990) ...................................................................................... 7, 11

*Nat'l Union Fire Ins. Co. of Pitt., PA v. All Am. Freight, Inc.*,
   2016 WL 4443629 (S.D. Fla. Mar. 7, 2016) ............................................................... 5, 6

*O'Brien Oil Pollution Serv., Inc. v. Kapoor*,
   2008 WL 2625352 (D.N.J. 2008) ..................................................................................... 9

*Paper Stylists, Inc. v. Fitchburg Paper Co.*,
   9 F.R.D. 4 (N.D.N.Y. 1949) ............................................................................................ 11

*Reeves v. Penn. R. Co.*,
   9 F.R.D. 487 (D. Del. 1949) ............................................................................................. 4

*Swofford v. B&W, Inc.*,
   336 F.2d 406 (5th Cir. 1964) ........................................................................................... 8

*T. Levy Assoc., Inc. v. Kaplan*,
   755 Fed. Appx. 116 (3d Cir. 2018) .................................................................................. 9

*U.S. S.E.C. v. Infinity Group Co.*,
   212 F.2d 180 (3d Cir. 2000) ............................................................................. 4, 8, 9, 11

*Walton v. Eaton Corp.*,
   563 F.2d 66 (3d Cir. 1977) ............................................................................................... 5

*Whirlpool Fin. Corp. v. Sevaux*,
   866 F. Supp. 1102 (N.D. Ill. 1994) ................................................................................... 4

### Statutes and Rules

Fed. R. Civ. P. 38 ............................................................................................................. *passim*

Fed. R. Civ. P. 39 ....................................................................................................... 4, 8, 11

## NATURE AND STAGE OF THE PROCEEDINGS

On January 29, 2016, Plaintiffs Kevin Sapp ("Sapp") and Jaime Hopper ("Hopper") (together, "Plaintiffs") entered into an Asset Purchase Agreement ("APA") with Defendants Industrial Action Services, LLC ("IAS") and RelaDyne, LLC ("RelaDyne") (together, "Defendants") concerning the sale of Industrial Action Services, Inc. and IAS Canada, Inc. (the "Companies"). D.I. 1-2, 34, 118. As part of the purchase price, a maximum of $5 million was to be paid as Earn Out Consideration tied to the post-closing financial performance of the Companies. *Id.*

After refusing to pay the Earn Out Consideration, Plaintiffs filed suit in the 127th Judicial District Court of Harris County, Texas on February 11, 2019. D.I. 1-2. Plaintiffs' original complaint sought damages for Defendants' breach of the APA, primarily for the lost Earn Out Consideration, and declaratory relief. *Id.* Additionally, Plaintiffs moved to compel Defendants to attend mediation, or in the alternative, sought a ruling that they be relieved of any contractual obligation to mediate. *Id.*

On March 12, 2019, RelaDyne removed the action to the United States District Court for the Southern District of Texas. D.I. 1. Plaintiffs filed their First Amended Petition in that Court on March 19, 2019. D.I. 7. After Defendants filed their Answer to the First Amended Petition, the action was then transferred to this Court on May 16, 2019. D.I. 12, 17.

On July 1, 2019, Plaintiffs filed a Second Amended Complaint. D.I. 34. For the first time, in the Second Amended Complaint, Plaintiffs asserted a cause of action for tortious interference with contractual relations against RelaDyne. *Id.* The Second Amended Complaint alleged that RelaDyne intentionally directed and caused IAS, its subsidiary, to breach the APA. *Id.* Defendants never filed a responsive pleading to the Second Amended Complaint. Instead, on August 1, 2019, Defendants filed a motion to dismiss the Second Amended Complaint, contending that this action

should be stayed while the parties arbitrated their disputes. D.I. 35. On March 25, 2020, Magistrate Judge Christopher Burke issued his Report and Recommendation that the motion to dismiss be denied. D.I. 50. On May 29, 2020, this Court ordered Plaintiffs' breach of contract and declaratory judgment claims to arbitration with a "nationally recognized public accounting firm" ("Accounting Firm"). D.I. 55. On January 14, 2022, after the Accounting Firm determined that Plaintiffs were not entitled to the Earn Out Consideration, Defendants moved to dismiss the Second Amended Complaint and for entry of judgment in Defendants' favor. D.I. 64. Plaintiffs opposed the motion to dismiss and moved to vacate the arbitrator's award. D.I. 69. On May 26, 2022, the Court denied Plaintiffs' motion to vacate and granted Defendants' motion to dismiss. D.I. 96.

On June 27, 2022, Plaintiffs appealed the Court's decision granting the motion to dismiss to the United States Court of Appeals for the Third Circuit. D.I. 106. The Third Circuit reversed the decision, finding that "[t]he parties are not consigned to arbitrate and instead may continue to litigate their claims in federal court." D.I. 108.

On September 20, 2023, the undersigned counsel entered their appearance on behalf of Plaintiffs. D.I. 112. On November 3, 2023, Plaintiffs filed their Third Amended Complaint, alleging four causes of action: (Count I) fraud against RelaDyne, (Count II) breach of contract against IAS, (Count III) breach of implied covenant against IAS, and (Count IV) tortious interference with contractual relations against RelaDyne. D.I. 118. Defendants moved to dismiss Counts I and III—Plaintiffs' fraud and implied covenant claims. D.I. 119-120. On July 17, 2024, the Court granted Defendants' motion to dismiss Counts I and III of the Third Amended Complaint. D.I. 131.

On July 31, 2024, Defendants filed a responsive pleading to Plaintiffs' tortious interference claim for the first time when they filed their Answer to Plaintiffs' Third Amended Complaint (the "Answer"). D.I. 133. On August 8, 2024, Plaintiffs timely filed a demand for a jury trial ("Jury Demand"). D.I. 134.

On September 19, 2024, Defendants filed a motion to strike the Jury Demand (the "Motion") and an opening brief in support of the Motion. This is Plaintiffs' answering brief in opposition to the Motion.

## SUMMARY OF ARGUMENT

1. Plaintiffs did not waive, and properly preserved, their right to a jury trial by making a timely demand pursuant to Rule 38 of the Federal Rules of Civil Procedure. D.I. 134. Pursuant to Rule 38(b), a party may demand a jury trial by "serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served[.]" The Second Amended Complaint introduced a new claim and corresponding issues of fact to this case—RelaDyne's alleged tortious interference with the terms of the APA. A finding of tortious interference in this case will require the fact finder to determine whether the alleged tortfeasor, RelaDyne, intended to cause IAS to violate the terms of the APA. That requires the fact finder to evaluate issues of intent and motive. Those issues were first asserted in the Second Amended Complaint and carried over to the Third Amended Complaint. Defendants never filed a responsive pleading to the Second Amended Complaint. The only responsive pleading Defendants submitted in response to the tortious interference claim is the Answer. Thus, the Answer is the "last pleading directed to the [new] issue" raised. D.I. 133; *see Early v. Bankers Life and Cas. Co.*, 853 F. Supp. 268, 270 (N.D. Ill. 1994); Fed. R. Civ. P. 38(b). Plaintiffs' Jury Demand was filed within 14 days of the Answer and therefore is timely under Rule 38(b).

3

2.     Alternatively, even if the Court finds that Plaintiffs waived their right to a jury trial, the Court should order a jury trial as authorized under Rule 39(b), which authorizes the Court to order a jury trial for any issues where a jury could have been demanded, regardless of the timeliness of the request.  Fed. R. Civ. P. 39(b); *U.S. S.E.C. v. Infinity Group Co.*, 212 F.2d 180, 195-96 (3d Cir. 2000).

## ARGUMENT

### I.     LEGAL STANDARD TO DEMAND A JURY TRIAL.

The Seventh Amendment of the United States Constitution recognizes individuals' fundamental right to be tried by a jury of their peers. *See* U.S. Const. amend VII.  That right is properly preserved when a party issues a timely demand in accordance with Rule 38 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 38(b).  Under Rule 38(b), a party properly makes a jury demand by:

> (1) serving the other parties with a written demand – which may be included in a pleading – no later than 14 days after *the last pleading directed to the issue is served*; and
>
> (2) filing the demand in accordance with Rule 5(d).

Fed. R. Civ. P. 38(b) (emphasis added).

### II.     PLAINTIFFS' SECOND AMENDED COMPLAINT RAISED A NEW ISSUE OF FACT, REVIVING PLAINTIFFS' RIGHT TO DEMAND A JURY TRIAL.

The "last pleading directed to the issue" under Rule 38(b) means "the final pleading which contests an issue that is subject to jury trial." *Whirlpool Fin. Corp. v. Sevaux*, 866 F. Supp. 1102, 1105 (N.D. Ill. 1994) (citing *Early*, 853 F. Supp. at 270).  When a party waives its right to a jury trial, filing an amendment does not automatically revive the party's right to demand a jury trial. *Reeves v. Penn. R. Co.*, 9 F.R.D. 487, 488 (D. Del. 1949).  Rather, the amendment to the complaint "must be directed to a new issue for which the party is demanding a jury trial." *Cedars-Sinai Med.*

4

*Ctr. v. Revlon, Inc.*, 111 F.R.D. 24, 29-30 (D. Del. 1986) (citing *Walton v. Eaton Corp.*, 563 F.2d 66, 72 (3d Cir. 1977)); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1310 (2nd Cir. 1973). The "new issue" rule requires that the amended pleading not concern "the same general issues as the previous pleadings." *Id.* (citations and quotation marks omitted). This means raising "new issues of fact and not new theories of recovery." *Nat'l Union Fire Ins. Co. of Pitt., PA v. All Am. Freight, Inc.*, 2016 WL 4443629, at *2 (S.D. Fla. Mar. 7, 2016) (citing *Guajardo v. Estelle*, 580 F.2d 748, 752-53 (5th Cir. 1978)).

The First Amended Petition sought damages from Defendants for their breach of the APA, specifically pertaining to the lost Earn Out Consideration. D.I. 1. The issue raised in the First Amended Petition is whether the Defendants breached their contractual obligations to Plaintiffs under the APA. *See id.* The Second Amended Complaint, however, raised a new issue of fact regarding RelaDyne's intent in directing and causing IAS to dispose of "Acquired Assets" under the APA, amounting to a claim for tortious interference with contract. D.I. 34. "Under Delaware law, to prevail on a tortious interference claim, a plaintiff must show that the defendant knew of a contract involving the plaintiff, *intentionally and improperly* interfered with it, and was a significant factor in causing the contract to be breached or otherwise terminated." *Cousins v. Goodier*, 283 A.3d 1140, 1160 (Del. 2022) (citations omitted and emphasis added).

In support of the tortious interference claim asserted in the Second Amended Complaint, Plaintiffs allege the following facts that were not asserted in the First Amended Petition:

    a.    Per the APA, IAS was to purchase the "Acquired Assets," defined as "the Company Assets and the Personal Goodwill." Personal Goodwill in the APA is defined as the "Individual Seller's unique abilities, knowledge, expertise, reputation, personal relationships and other characteristics." D.I. 34 at ¶13. Schedule 6.1(b) of the APA provides that over 97% of the purchase price was allocated to intangible assets in the form of goodwill. *Id.* The goodwill attributed

5

          to Sapp represented 45.91% of the purchase price and the goodwill attributed to Hopper represented 25% of the purchase price. *Id.* Collectively, Plaintiffs' goodwill was quantified as 70.91% of the purchase price. *Id.* Plaintiffs entered into employment agreements with RelaDyne in accordance with the APA, where they were to perform services for RelaDyne through IAS. *Id.* at ¶18. At no time have either Sapp or Hopper ever been employed by IAS. *Id.* As such, over 70% of the consideration for the purchase price were effectively "transferred immediately," triggering Defendants' obligation to pay the Earn Out Consideration to Plaintiffs under Section 2.6(f) of the APA. *Id.* at ¶17,18.

    b.    A few months after IAS and Plaintiffs entered into the APA, RelaDyne, Inc., an upstream owner of the Defendants, was purchased by a private investment firm, Audax Group ("Audax"). *Id.* at ¶ 20. Prior to the purchase by Audax, there was a $5 million liability reflected on IAS's balance sheet which represented the full Earn Out potential. *Id.* However, during the process of the Audax purchase, $2.9 million of the $5 million reserve was written off. *Id.*

These factual assertions create a new general issue of fact: whether RelaDyne intended to interfere with the APA. In determining this general issue of fact, the jury can assess whether RelaDyne (1) directed or caused IAS to violate its obligations under Section 2.6(g) of the APA, governing the covenants of good faith and fair dealing, obligation to keep the business substantially intact, and non-circumvention with respect to the Earn Out Consideration; and (2) instructed IAS, directly or indirectly, to drain the $5 million reserve intended for the Earn Out Consideration.

In their Motion, Defendants fail to consider the element of intent and facts related solely to RelaDyne's conduct relevant to a claim for tortious interference against RelyDyne. Intent is not a requirement in a breach of contract claim—the only cause of action presented in the First Amended Petition. D.I. 1, 141. Accordingly, the Second Amended Complaint not only changed the issues in that pleading, but also introduced a new issue of fact. *See Lanza*, 479 F.2d at 1310 ("A jury trial is revived in an action only if the amendments of the original pleading, at the very least, 'change the issues.'"); *see also Nat'l Union Fire Ins. Co. of Pitt., PA*, 2016 WL 4443629, at

\*2 (denying defendant's motion to strike jury demand because plaintiff's factual allegations in the amended complaint, which were not in the previous pleading, introduced a new issue of fact). Accordingly, the Second Amended Complaint meets the "new issue" requirement, thereby reviving Plaintiffs' right to demand a jury trial.

### III. PLAINTIFFS' JURY DEMAND WAS MADE WITHIN 14 DAYS OF THE LAST PLEADING DIRECTED TO THE NEW ISSUE AND WAS THEREFORE TIMELY.

The authorities are uniform that the term "last pleading" as set forth in Rule 38(b) refers to "a pleading which contests the issue triable by a jury." *Early*, 853 F. Supp. at 270 (*citing McCarthy v. Bronson*, 906 F.2d 835, 840 (2d Cir. 1990)). "Generally, such pleading will be an answer to a complaint or a reply to a counterclaim. A motion to dismiss a complaint, however, is not considered a 'last pleading' directed to an issue triable by a jury." *Id.* (citations omitted); *see Haven v. Polska*, 215 F.3d 727, 732 (7th Cir. 2000) ("A motion to dismiss is not a responsive pleading.").

Critically, Defendants never filed a responsive pleading to Plaintiffs' Second Amended Complaint. Rather, Defendants filed multiple motions to dismiss, which are not responsive pleadings for the purposes of the "last pleading" rule pursuant to Rule 38(b). *See id.*; D.I. 35, 64. On July 31, 2024, Defendants filed the Answer—the last pleading directed to the new issues of fact raised by the Second Amended Complaint, which were carried over and extended by Plaintiffs' Third Amended Complaint. D.I. 133; *see McCarthy*, 906 F.2d at 840 ("'[T]he last pleading directed to' an issue is not the pleading that raises the issue, it is the pleading that contests the issue."); *see also* Fed. R. Civ. P. 38(b)(1). Plaintiffs subsequently filed their Jury Demand on August 8, 2024, within 14 days of Defendant's filing of their Answer, making Plaintiff's demand timely. D.I. 134; *see* Fed. R. Civ. P. 38(b).

Plaintiffs' Jury Demand was made in accordance with Rule 38(b) and the case law construing that rule. Accordingly, Plaintiffs respectfully request that the Court deny the Motion and sustain the Jury Demand. D.I. 134.

IV.  **ALTERNATIVELY, THE COURT SHOULD GRANT A JURY TRIAL UNDER RULE 39(B), GIVEN THE CASE'S COMPLEX PROCEDURAL HISTORY WITH RESPECT TO THE ARBITRATION ISSUE.**

Alternatively, if the Court determines that Plaintiffs' Jury Demand was untimely, Plaintiffs respectfully ask the Court to exercise its discretion, pursuant to Rule 39(b), and grant them a jury trial. Rule 39(b) provides:

> Issues on which a jury trial is not properly demanded are to be tried by the court. *But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded.*

Fed. R. Civ. P. 39(b) (emphasis added). Accordingly, the Court "may still grant a jury trial, even when the demand was untimely made." *Infinity Group.*, 212 F.2d at 195-96. Additionally, the Seventh Amendment guarantees the fundamental right to a jury trial in "[s]uits at common law" and "the courts should indulge every reasonable presumption against waiver of such right." *Container Co. v. Carpenter Container Corp.*, 9 F.R.D. 261, 263 (D. Del. 1949) (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 811-12 (1937)); U.S. Const. amend VII. As such, with the Court's discretion "invoked under Rule 39(b), the [C]ourt should grant a jury trial in the absence of strong and compelling reasons to the contrary." *Swofford v. B&W, Inc.*, 336 F.2d 406, 409 (5th Cir. 1964).

In making its determination, the Court must look to the facts and circumstances of each individual case. *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 610 F. Supp. 1319, 1328 (D. Del. 1985); *see also Container Co.*, 9 F.R.D. at 263 ("The discretion to be exercised under the rule should be exercised in accordance with law and reason."). The factors to be considered are:

(1) whether the issues are suitable for a jury;

8

>(2) whether granting the motion would disrupt the schedule of the Court or the adverse party;
>(3) whether any prejudice would result to the adverse party;
>(4) how long the party delayed in bringing the motion; and
>(5) the reasons for failure to file a timely demand.

*Infinity Group*, 212 F.2d at 196 (citing *Fort Wash. Res., Inc. v. Tannen*, 853 F. Supp. 341, 342 (E.D. Pa. 1994)).

First, the issues presented in this action are suitable for a jury. In this action, the primary issues to be determined are: (1) whether IAS breached its contractual obligations to Plaintiffs under the APA by (a) taking actions adverse to the business's success during the earn out period and circumventing payment of the Earn Out Consideration and (b) alternatively, failing to pay Plaintiffs an amount dictated by the APA after disposing of substantially all of the Acquired Assets; and (2) whether RelaDyne intended to direct and cause IAS to violate the APA causing injury to Plaintiffs.

Courts previously have held that breach of contract and damages issues are issues of law and are therefore suitable for the jury. *See Amaco Oil Co. v. Torcomian*, 722 F.2d 1099, 1104 (3d Cir. 1983) ("A routine claim such as that . . . for damages stemming from breach of contract is legal."); *see also O'Brien Oil Pollution Serv., Inc. v. Kapoor*, 2008 WL 2625352, at *1 (D.N.J. 2008) (finding a claim for money damages under contract theory was deemed suitable for a jury). The breach of contract claim is an issue of law, as Plaintiffs were injured as a result of IAS's failure to abide by the APA, and they are seeking monetary damages as a result. Accordingly, the breach of contract claim is an issue suitable for the jury. *In re Inacom Corp.*, 2005 WL 2148563, at *3 (D. Del. Sept. 6, 2005) (finding that breach of contract claims are issues of law, triable by a jury).

A cause of action for tortious interference has been repeatedly addressed by a jury, as it is an issue of law suitable for jury determination. *See, e.g.*, *T. Levy Assoc., Inc. v. Kaplan*, 755 Fed. Appx. 116 (3d Cir. 2018); *Cunningham v. Williams Telecomm. Sys., Inc.*, 928 F. Supp. 110 (D.

9

Mass. 1996); *ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp.2d 622 (E.D. Penn. 2003). Here, the jury will evaluate whether RelaDyne's intentional acts were a significant factor in IAS's breach of the APA or violations of RelaDyne's own obligation which may arise under the APA, which caused Plaintiffs' injuries, and will determine the amount of damages to which Plaintiffs are entitled. This claim involves questions of intent, motive, and whether the interference was proper, which are well-suited for a jury's collective judgment. Therefore, the tortious interference claim is an issue suitable for the jury.

Second, granting Plaintiffs request for a jury trial "does not have significant implications for the Court's docket or for the scheduling of this case." *Fed. Deposit Ins. Corp. v. Cafritz*, 770 F. Supp. 28, 31 (D.D.C. 1991). The trial is set for November 17, 2025. *See* D.I. 137. This action is still in a phase where a jury trial can be accommodated without affecting the Court's docket or necessitating a trial rescheduling. Moreover, as set forth in the Case Scheduling Order entered in this action, there could be no disruption of Defendants' schedule because the case will be tried on November 17, 2025, regardless of whether or not it is a jury trial. *Id.*

Third, no prejudice will befall Defendants by scheduling this action for a jury trial. Given that the trial is scheduled for November 17, 2025, Defendants would not suffer any prejudice if the Court sustains the Jury Demand. Furthermore, Plaintiffs filed their Jury Demand approximately two months ago (fifteen months before trial), providing Defendants with ample notice of the possibility of a jury trial. With over a year remaining before the trial date, Defendants have sufficient time to prepare for a jury trial and would not be prejudiced by being required to do so.

Fourth, the Court will consider the period of time the moving party delayed in submitting this request. As summarized above, the case has undergone numerous proceedings across various

courts. From the initial filing on February 11, 2019, until September 7, 2023, the primary focus was whether the parties were bound to arbitration to resolve the disputes. *See* D.I. 1-108. On September 7, 2023, the Third Circuit finally resolved this issue by reversing the Court's May 26, 2022 Order, recognizing Plaintiffs' right to litigate this dispute and remanding the case for further proceedings. D.I. 108. The undersigned counsel entered appearance on September 20, 2023. Plaintiffs' Counsel admitted *pro hac vice* to this Court, represented Plaintiffs in the appeal and only appeared after the case had been stayed for the purposes of arbitration. Less than two months after undersigned Counsel was instructed, Plaintiffs filed their Third Amended Complaint on November 11, 2023.

To ensure that demand for jury trial was made properly, Plaintiffs properly waited until the "last pleading directed to the issue" was filed, which occurred when Defendants submitted their Answer on July 31, 2024. *See McCarthy*, 906 F.2d at 840 ("'[T]he last pleading directed to' an issue is not the pleading that raises the issue, it is the pleading that contests the issue."); *Early*, 853 F. Supp. at 270. Again, Plaintiffs' Jury Demand was filed within the 14-day requirement following Defendants' filing of their Answer. D.I. 134. Accordingly, there has been no delay in seeking a jury trial, given the circumstances of the proceedings.

Finally, if the Court finds that Plaintiffs' Jury Demand was not timely, Plaintiffs had a reasonable excuse. "A reasonable excuse for failure to make a timely demand for a jury trial justifies the court in exercising its discretion under Rule 39(b) in favor of a trial by jury." *Container Co.*, 9 F.R.D. at 262 (citing *Paper Stylists, Inc. v. Fitchburg Paper Co.*, 9 F.R.D. 4, 5 (N.D.N.Y. 1949)). Courts typically deny Rule 39(b) relief when the only justification offered is the inadvertence or oversight of counsel. *Infinity Group*, 212 F.2d at 195. The timing of the Jury Demand in this action, however, is not due to attorney inadvertence. From the outset, Plaintiffs

11

were effectively bound by the issue of whether they were contractually obligated to mediate their claims under the APA, which needed resolution before proceeding. Only once the Third Circuit determined Plaintiffs had the right to litigate their claims—which took more than three years after commencement of this action—Plaintiffs promptly filed their Jury Demand in compliance with the filing and timing requirements of Rule 38(b).

On balance, Plaintiffs' right to a jury trial significantly outweighs the considerations under Rule 39(b), because: (1) the issues are well-suited for a jury's assessment; (2) sustaining the Jury Demand would not disrupt the Court's or Defendants' schedule; (3) Defendants' would not be prejudiced because they have ample time to prepare their case to be presented to a jury; (4) any delay in filing the motion was justifiable; and (5) the reasons the Jury Demand was filed recently are rooted in the circumstances of the proceedings, all of which underscore the importance of protecting Plaintiffs' right to a jury trial.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion, sustain the Jury Demand, and schedule this action to be tried before a jury.

Dated: October 3, 2024

OF COUNSEL:

Adam T. Muery
Maureen Farrell
**MUERY, FARRELL & KELLY OC**
6200 La Calma Drive
Austin, TX 78752
adam@texanlegal.com
maureen@texanlegal.com
filing@texanlegal.com

**CHIPMAN BROWN CICERO & COLE, LLP**

 */s/ Joseph B. Cicero*
Joseph B. Cicero (#4388)
Ryan M. Lindsay (#6435)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
cicero@chipmanbrown.com
lindsay@chipmanbrown.com

*Attorneys for Plaintiffs*

4861-9257-9561, v. 7