**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

KEVIN B. SAPP and JAIME HOPPER,    )
                                        )
           Plaintiffs,         )
                                        )     C.A. No. 19-912-RGA
           v.             )
                                        )
INDUSTRIAL ACTION SERVICES, LLC   )
and RELADYNE, LLC                )
                                        )
          Defendants.         )

**DEFENDANTS' COMBINED REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE PLAINTIFFS' JURY DEMAND AND ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER DIRECTING A JURY TRIAL <u>PURSUANT TO FED. R. CIV. P. 39(b)</u>**

Chad S.C. Stover (No. 4919)
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
Tel: (302) 300-3474
Fax: (302) 300-3456
chad.stover@btlaw.com

Edward D. Shapiro (*pro hac vice*)
Irving M. Geslewitz (*pro hac vice*)
MUCH SHELIST, P.C.
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Phone (312) 521-2414
Fax (312) 521-2314
eshapiro@muchlaw.com
igeslewitz@muchlaw.com

*Attorneys for Defendants Industrial Action Services, LLC and RelaDyne, LLC*

## <u>TABLE OF CONTENTS</u>

I.    Plaintiffs Fail to Show That Their Untimely Jury Demand Under Fed.R.Civ.P. 38(b) Was Revived by Their Amended Pleadings Because They Involved the Same General Issues. .. 1

II.   The Court Should Decline to Exercise Its Discretion to Order a Jury Trial Under Fed.R.Civ.P. 39(b). ........................................................................................................... 6

III.  Conclusion ................................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bill Darrah Builders, Inc. v. Hall at Makena Place, LLC*,
  No. CV 15-00518, JMS-KSC, 2017 WL 11139679 (D. Haw. Aug. 14, 2017) ....................11

*Burgess v. Hendley*,
  26 V.I. 173, 1991 WL 11818252 (Terr. V.I. 1991) ...................................................8

*Cedars-Sinai Med. Ctr. v. Revlon, Inc.*,
  111 F.R.D. 24 (D. Del. 1986) ...............................................................3

*Cimildoro v. Metro. Prop. & Cas. Ins. Co.*,
  No. CIV.A. 09-1907, 2010 WL 891838 (E.D. Pa. Mar. 8, 2010)...........................................13

*Container Co. v. Carpenter Container Corp.*,
  9 F.R.D. 261 (D. Del. 1949) ...............................................................7

*In re DaimlerChrysler AG Securities Litig.*,
  No. CIV.A. 00-993-JJF, 2003 WL 22769051 (D. Del. Nov. 19, 2003), *aff'd*
  *sub nom. Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212 (3d Cir. 2007)....................7

*Davidson Pipe Co., Inc. v. Laventhol & Horwath*,
  125 F.R.D. 363 (S.D.N.Y. 1989) ...........................................................7, 8

*Faylor v. Szupper*,
  Civil Action No. 08-996, 2009 WL 3698093 (W.D. Pa. Nov. 2, 2009)...................................9

*Gallardo v. Gulf South Pipeline Co., L.P.*,
  2005 WL 14905 (E.D. La. 2005) ...........................................................14

*Kalmanovitz v. G. Heileman Brewing Co., Inc.*,
  610 F. Supp. 1319 (D. Del.1985)...........................................................6

*Katzenmoyer v. City of Reading*,
  Civ. A. No. 00–CV-5574, 2001 WL 1175139 (E.D. Pa. Aug. 6, 2001)...................................13

*LaMarca v. Turner*,
  995 F.2d 1526 (11th Cir. 1993) ...........................................................5

*Lanza v. Drexel & Co.*,
  479 F.2d 1277 (2d Cir. 1973)...............................................................5

*Lastra v. Weil, Gotshal & Manges LLP*,
  No. 03CIV.8756(RJH)(RLE), 2005 WL 551996 (S.D.N.Y. Mar. 8, 2005) .............................4

*Lee v. Boyle-Midway Household Products, Inc.*,
    785 F. Supp. 533 (W.D. Pa. 1992)............................................................6

*Ligouri v. New York, N. H. & H. R. Co.*,
    26 F.R.D. 565 (D. Conn. 1961).............................................................8

*New Creation Contact Lenses of Par, Inc. v. Continuous Curve Contact Lens, Inc.*,
    100 F.R.D. 75 (W.D. Ark. 1983) .........................................................13

*Reis v. Barley, Snyder, Senft & Cohen LLC*,
    No. CIV.A. 05CV01651, 2008 WL 859238 (E.D. Pa. Mar. 27, 2008) .................14

*Rosen v. Dick*,
    639 F.2d 82 (2d Cir.1980)....................................................................3

*Scrinko v. Reading Co.*,
    117 F. Supp. 603 (D.N.J. 1954) .......................................................7, 8

*Shen Mfg. Co. v. Family Dollar Stores, Inc.*,
    No. 06-0190, 2006 WL 3164788 (E.D. Pa. Oct. 31, 2006) ........................9

*Sunenblick v. Harrell*,
    145 F.R.D. 314 (S.D.N.Y. 1993) .........................................................3

*Todd v. Blake*,
    No. 3:17-CV-0012, 2022 WL 17719698 (D.V.I. Dec. 15, 2022)................... *passim*

*Tracinda Corp. v. DaimlerChrysler AG,*
    502 F.3d 212 (3d Cir. 2007)...................................................................7

*U.S. S.E.C. v. Infinity Group Co.*,
    212 F.3d 180 (3d Cir. 2000)............................................................. *passim*

*Walton v. Eaton Corp.*,
    563 F.2d 66 (3d Cir. 1977) (*en banc*) ..................................................4

*William Goldman Theatres v. Kirkpatrick*,
    154 F.2d 66 (3d Cir. 1946)....................................................................7

**Rules**

Fed. R. Civ. P. 38(b) ....................................................................... *passim*

Fed. R. Civ. P. 39(b) ....................................................................... *passim*

Defendants Industrial Action Services, LLC ("IAS") and RelaDyne, LLC ("RelaDyne") submit this Combined Reply Brief In Support of Their Motion to Strike Plaintiffs' Jury Demand and Answering Brief in Opposition to Plaintiffs' Motion for an Order Directing a Jury Trial Pursuant to Fed. R. Civ. P. 39(b).

## I.     Plaintiffs Fail to Show That Their Untimely Jury Demand Under Fed. R. Civ. P. 38(b) Was Revived by Their Amended Pleadings Because They Involved the Same General Issues.

Defendants moved to strike Plaintiffs' Jury Trial Demand because they failed to meet Rule 38(b)(1)'s requirement that they serve their demand "no later than 14 days after the last pleading directed to the issue." (D.I. 140).

As shown in Defendants' Opening Brief, the settled case law holds that amended pleadings that concern the same general issues as the previous pleadings do not raise "new issues" under Rule 38(b). (D.I. 141). Plaintiffs' Response tries to avoid that by claiming that their Second Amended Complaint "raised a new issue": RelaDyne's alleged tortious interference with the contract. (D.I. 147 at 4-7).

In so doing, however, Plaintiffs ignore that *the same core facts* that formed the basis for Plaintiffs' breach of contract claim in the earlier pleadings were simply realleged in the Second and Third Amended Complaints. Plaintiffs argue that the mere conversion of their legal theory of liability against RelaDyne from breach of contract in the earlier pleadings to tortious interference in the Second Amended Complaint changed the nature or character of the suit such that any untimely waiver by operation of Rule 38(d) was revived. (*Id.*). Thus, they assert, the tortious interference claim raised "a new issue of fact" because to prevail on such a claim they have to show that RelaDyne intentionally and improperly interfered with the contract (the Asset Purchase Agreement (or "APA")), while proving such intent is not a requirement in a breach of contract

claim. (*Id*.).

But this ignores that proving Plaintiffs' breach of contract claim necessitates proving an intent to violate. In all four versions of the complaint, Plaintiffs allege that IAS, as directed by RelaDyne, breached section 2.6(g) of the APA, which creates an "obligation of *good faith and fair dealing* with respect to the operation of the Business" during the Earn Out Periods, to use "reasonable efforts to maintain the Business substantially intact," and "to refrain from taking any action *designed to circumvent* payment of Earn Out Consideration." (D.I. 1-2, 7, 34 and 34-1, and 118) (emphasis added). Under this contract language, proving breach of contract *requires* Plaintiffs to demonstrate Defendants' deliberate bad faith and actions "designed to circumvent payment of the Earn Out Consideration." They must prove bad faith, intentional actions designed to circumvent the Earn Out Consideration. And intent is what Plaintiffs do in fact allege in all versions of their complaint—in both the original and First Amended Complaint and then in both the Second and Third Amended Complaints. (*Id*.). The core allegations are the same: as this Court encapsulated it, "Plaintiffs allege that Defendants intentionally ran the business to lower EBITDA and avoid paying any Earn Out Consideration, in violation of their good faith and fair dealing obligations." (D.I. 55, Mem. Opinion, at 2, citing D.I. 34, Second Amended Complaint).

There is, then, no substantive difference in the intent or improper interference pleaded to prove breach of contract here (against IAS as directed by RelaDyne) as opposed to tortious interference (against RelaDyne). Indeed, in their tortious interference claim, Plaintiffs allege no new facts. In Count IV (tortious interference), they simply refer to the same facts supporting their breach of contract cause of action (Count II), with all actions taken by IAS allegedly being directed by RelaDyne such that "RelaDyne's intentional acts were a significant factor in causing the breach of the Agreement." (D.I. 118 at ¶¶ 80-83). The prayer for relief is undifferentiated for both causes

2

of action (*id.*, Prayer for Relief) and the same as requested in the earlier pleadings when the only theory was breach of contract against both Defendants: award of the allegedly lost Earn Out Consideration. (D.I.1-2, 7).

Further, simply alleging a new legal theory of recovery on the same set of facts does not create a new issue. *Rosen v. Dick,* 639 F.2d 82, 94 (2d Cir. 1980); *Sunenblick v. Harrell*, 145 F.R.D. 314, 317 (S.D.N.Y. 1993). A jury trial is revived in an action only if the amendments of the original pleading, at the very least, "change the issues." *Cedars-Sinai Med. Ctr. v. Revlon, Inc.,* 111 F.R.D. 24, 30 (D. Del. 1986).

Plaintiffs maintain that they do make new factual allegations in the Second Amended Complaint (repeated in the Third Amended Complaint) that were not in the earlier pleadings, which they claim were sufficient to create new issues of fact meeting the "new issues" standard of Rule 38(b). (D.I. 147 at 5-6). Specifically, they point to a new factual allegation in the Second Amended Complaint that because 70.91% of the purchase price was allocated to goodwill attributed to Plaintiffs, that 70.91% was transferred immediately when Plaintiffs simultaneously entered into employment agreements with RelaDyne to perform their services for IAS. (*Id*). This, they contend, amounted to a "sale or disposition of substantially all of the Acquired Assets" under Section 2.6(f) of the APA, triggering an obligation to pay the Maximum Earn Out amount. (*Id.*). They also point to a new averment that the full potential $5 Million Earn Out liability was reflected on IAS's balance sheet, but supposedly $2.9 Million of that reserve was "written off" when RelaDyne's upstream owner was sold to a private investment firm, supposedly further demonstrating Defendants' bad faith. (*Id.*).

But merely alleging new facts in support of an existing claim is not enough to satisfy the "new issues" standard of Rule 38(b). In the leading case in this Circuit, *Walton v. Eaton Corp.*,

563 F.2d 66 (3d Cir. 1977) (*en banc*), the Court explained:

> It is well established that if the original pleadings in an action effectively waive trial by jury under Fed.R.Civ.Proc. 38(b) and (d), the right to trial by jury of all matters contained in those pleadings cannot be revived by amending the original pleadings [citing case authority] . . .. Jury trial may be demanded for any "new issues" raised by the amended pleadings, "but the amendment does not revive a right, previously waived, to demand jury trial *on the issues already framed by the original pleadings.*" 9 C. Wright & A. Miller, Federal Practice and Procedure s 2320 at 94-95 (1971).

*Id*. at 71-72 [emphasis supplied].

Applying that standard, in *Walton* the Court concluded that the "amendments" in question there, consisting of facts that had not been alleged in the previous complaints, did not raise a "new issue," since they did not change the "basic issue" in the case or the "general area of dispute." *Id.* at 74. *See also Lastra v. Weil, Gotshal & Manges LLP*, No. 03CIV.8756(RJH)(RLE), 2005 WL 551996, at *2 (S.D.N.Y. Mar. 8, 2005) ("The concept encompasses an inquiry as to whether the amendment changes 'the character of the suit,' or the ultimate issue for decision." (quotations omitted)).

Here, the Second and Third Amended Complaints did not raise new issues within the meaning of Rule 38(b) as defined by cases such as *Walton*. The Original and First Amended Complaints raised one basic issue: did IAS, as directed by RelaDyne, breach the APA with respect to Earn Out Consideration by engaging in actions with the intention of preventing Plaintiffs from achieving their targets? (D.I.1-2, 7). The added factual assertions in the Second Amended Complaint and repeated in the Third Amended Complaint did not change the basic issue in the case, or the general area of dispute, or the character of the suit or ultimate issue for decision. They simply provided new particularized facts as examples of how Defendants allegedly intentionally prevented Plaintiffs from achieving their Earn Out Consideration in violation of the APA. *See*

*Lanza v. Drexel & Co.,* 479 F.2d 1277, 1310 (2d Cir. 1973); *LaMarca v. Turner*, 995 F.2d 1526, 1545 (11th Cir. 1993) ("New facts that 'merely clarif[y] the same general issues raised in the original complaint' do not create new issues of fact upon which to assert a jury demand." (quotations omitted)).

There is another reason for granting Defendants' motion to strike Plaintiffs' jury trial demand. As their principal basis for opposing Defendants' motion, Plaintiffs maintain that the tortious interference claim raised in the Second Amended Complaint amounted to a new issue independent of the breach of contract claim. Yet in a related lawsuit filed by Plaintiffs, their same *pro hac vice* counsel argued otherwise, contending that the tortious interference claim was intertwined with and dependent on the breach of contract claim. In that lawsuit, Plaintiffs sued their previous counsel of record in the present case, Matthew Mussalli, for malpractice in connection with his handling of the present lawsuit. *Kevin Sapp and Jaime Hopper v. The Mussalli Law Firm and Matt Mussalli*, Cause No. 23-12-18584 in the District Court for Montgomery County - 457th Judicial District Court, Montgomery County, Texas. Plaintiffs claimed that Mussalli was negligent by, *inter alia*, advising that the tortious interference claim was separate from the breach of contract claim such that it could still be maintained as a "second bite of the apple" in federal court if the breach of contract claim sent to arbitration failed. (Original Petition, ¶¶ 22-25, attached as **Exhibit A**). Plaintiffs maintained that Mussalli should have known this was not true, because the tortious interference claim would die if the breach of contract claim did not survive arbitration. (*Id.*). Yet here Plaintiffs incompatibly argue that the tortious interference claim, "changed the issues" and did not concern "the same general issues as the previous pleadings." (D.I.

147 at 5, 6).[1] Plaintiffs' position in their suit against their former counsel at the very least contradicts and undermines the argument they are advancing here.

In sum, Plaintiffs' jury trial demand was untimely and thereby waived, and their subsequent amended pleadings did not raise any new issue sufficient to "revive" the previous waiver. Plaintiffs' jury trial demand should therefore be stricken pursuant to Rule 38(b) and (d).

## II. The Court Should Decline to Exercise Its Discretion to Order a Jury Trial Under Fed. R. Civ. P. 39(b).

Realizing they waived the right to demand a jury under Rule 38, Plaintiffs alternatively move the Court to exercise its discretion under Rule 39(b) to order a jury trial. (D.I. 146). The Court should deny this request.

Rule 39(b) states that "[i]ssues on which a jury trial is not properly demanded are to be tried by the court. But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded." Fed. R. Civ. P. 39(b). However, "[t]he exercise of such discretion ... must be based upon circumstances warranting its exercise lest discretion become a mere arbitrary act of the court." *Kalmanovitz v. G. Heileman Brewing Co., Inc.,* 610 F. Supp. 1319, 1328 (D. Del.1985).

Plaintiffs cite some outlier cases from other jurisdictions to the effect that courts should indulge every reasonable presumption against waiver of the jury trial right under Rule 39(b) (D.I. 147 at 8). But that is not the standard in this and most other Circuits. The Third Circuit starts with the premise that where the only justification for the delay is inadvertence or oversight of counsel,

---

[1] The record in the malpractice case discloses that Mussalli denied the allegations against him (Defendants' Original Answer), and the case eventually settled (Rule 11 Agreement). Plaintiffs, through *pro hac vice* counsel, has also sued the Accounting Firm that issued the arbitration decision in this case. *Kevin B. Sapp and Jaime Hopper v. EisnerAmper LLP, Eisner Advisory Group LLC, and James J. Agar*, Index No. 654861/2022, Supreme Court of the State of New York, County of New York, NYSCEF Doc. No. 2.

then relief under Rule 39(b) will generally be denied. *U.S. S.E.C. v. Infinity Group Co.*, 212 F.3d 180, 195 (3d Cir. 2000). To do otherwise "would encourage chicanery while failing to encourage and reinforce familiarity with the Federal Rules of Civil Procedure." *Lee v. Boyle-Midway Household Products, Inc.*, 785 F. Supp. 533, 536 (W.D. Pa. 1992). Thus, a valid reason must be more than mere inadvertence of counsel, such as something rising to the level of excusable neglect. *Container Co. v. Carpenter Container Corp.*, 9 F.R.D. 261, 263 (D. Del. 1949).

But where counsel *intended* to waive a jury trial, there is little or no justification for relief under Rule 39(b). *William Goldman Theatres v. Kirkpatrick*, 154 F.2d 66, 69 (3d Cir. 1946); *Davidson Pipe Co., Inc. v. Laventhol & Horwath*, 125 F.R.D. 363, 371 (S.D.N.Y. 1989) (noting that "courts have frequently rejected late jury demands that seem to be based merely on a change in litigation strategy"); *see also In re DaimlerChrysler AG Securities Litig.*, No. CIV.A. 00-993-JJF, 2003 WL 22769051, at *2 (D. Del. Nov. 19, 2003) (recognizing that courts routinely enforce contractual jury trial waivers), *aff'd sub nom. Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212 (3d Cir. 2007).

Here, previous counsel for Plaintiffs filed the original Complaint, the First Amended Complaint and the Second Amended Complaint. In none of those pleadings did counsel demand a jury trial. When Defendants filed their Answer to the First Amended Complaint, Plaintiffs' previous counsel did not serve a demand for jury trial within 14 days after the filing of the Answer or at any subsequent time, for that matter, as required by Rule 38(b). Instead, they filed their Second Amended Complaint, *again* not requesting a jury trial. Previous counsel are seasoned and experienced litigators presumably well familiar with the Rules of Civil Procedure. The only reasonable inference is that for tactical reasons they did not *intend* to have a jury trial and deliberately and consciously did not demand a jury trial. *Cf. Todd v. Blake*, No. 3:17-CV-0012,

2022 WL 17719698, at *6 (D.V.I. Dec. 15, 2022) (refusing to assume inadvertence of prior counsel); *Scrinko v. Reading Co.*, 117 F. Supp. 603, 606 (D.N.J. 1954) (same; "[t]here is nothing before the court now to prove that former counsel had inadvertently waived a jury trial"). Indeed, in their Opening Brief, Plaintiffs do not present a declaration or any other evidence showing that previous counsel acted other than deliberately.

Thus, the only reasonable conclusion is that Plaintiffs' present counsel has decided to change strategy and now wants a jury trial. But "Rule 39(b) is simply not designed to encourage belated changes of trial strategy." *Todd*, 2022 WL 17719698, at *6 (citing *Burgess v. Hendley*, 26 V.I. 173, 176 (1991)). Of course, mere change of counsel, standing alone, is not a valid justification for discretionary Rule 39(b) relief. *Ligouri v. New York, N. H. & H. R. Co.,* 26 F.R.D. 565, 568 (D. Conn. 1961). As the court in *Todd* put it, "[i]f [] new counsel disagrees with prior counsel's trial strategy, she cannot abuse Rule 39 to right the ship." *Todd*, 2022 WL 17719698, at *6. The Court should deny new counsel's belated attempt to change course, especially here where previous counsel intentionally and repeatedly decided to waive the right to a trial by jury.

Plaintiffs point to the Third Circuit's five-factor balancing test enunciated in *U.S. S.E.C. v. Infinity Grp. Co.* to determine whether a court should exercise its discretion to permit an untimely demand for a jury under Rule 39(b). The five factors are: "1) whether the issues are suitable for a jury; 2) whether granting the motion would disrupt the schedule of the Court or the adverse party; 3) whether any prejudice would result to the adverse party; 4) how long the party delayed in bringing the motion; and 5) the reasons for the failure to file a timely demand." *Id.*, 212 F.3d at 196. It bears repeating, however, that in *Infinity* the Third Circuit recognized the default rule that there first must be a valid justification for the delay, and that mere inadvertence or oversight by counsel generally leads to a denial of Rule 39(b) relief. *Id*. at 195. Here, the alleged failure to file

8

a timely demand was by previous counsel, which Plaintiffs have not shown to even be inadvertent. Courts in this Circuit generally deny relief in this circumstance. *Davidson Pipe,* 125 F.R.D. at 371. Given that Plaintiffs have not shown that their previous failures to demand a jury trial were other than intended, the five factors set forth in *Infinity* serve to only reinforce why the Court should deny relief to Plaintiffs.

This is particularly evident when considering Factor 4, how long the party delayed in bringing the motion, and Factor 5, the reasons for the failure to file a timely demand, which are of most critical importance in this case.

Factor 4 certainly does not support Plaintiffs. This lawsuit was filed February 11, 2019. (D.I. 1-2). Plaintiffs did not make their jury trial demand until August 8, 2024 (D.I. 134), *over 4 ½ years later*, and almost as long after April 16, 2019, which was the 14th day for doing so under Rule 38(b) once Defendants filed their Answer to the First Amended Complaint on April 2, 2019. (D.I. 12). This is an *extremely* long period of time and far longer than other delays that courts have found to be too long to grant a motion under Rule 39(b). *Todd*, 2022 WL 17719698, at *6 (terming "intolerable" a delay of more than 4 years in filing a Rule 39(b) motion). Even far lesser delays have contributed to denials of such motions. *See Faylor v. Szupper*, Civil Action No. 08-996, 2009 WL 3698093, at *2 (W.D. Pa. Nov. 2, 2009) (delay of five months); *Shen Mfg. Co. v. Family Dollar Stores, Inc.*, No. 06-0190, 2006 WL 3164788, at *2 (E.D. Pa. Oct. 31, 2006) (delay of six months).

Plaintiffs offer as an excuse for this dilatoriness that from the initial filing on February 11, 2019 until September 7, 2023, the primary focus in the case was whether the parties were bound to arbitration to resolve the disputes. (D.I. 147 at 14-15). But they fail to explain how that serves as an excuse for not having made a jury demand in any of the pleadings or why that excused their

failure to have done so after the Answer to the First Amended Complaint was filed. Indeed, it was Plaintiffs who all along opposed arbitration and wanted this case decided in court.

Plaintiffs offer the further excuse that it was only on September 20, 2023 that the undersigned counsel entered his appearance, and that Plaintiffs filed their Third Amended Complaint two months later, after which they "properly waited until the 'last pleading directed to the issue' was filed" to make their jury demand, which occurred when Defendants eventually filed their Answer on July 31, 2024. (D.I. 147 at 15). But present *pro hac vice* counsel filed her appearance in this Court on January 26, 2022 (D.I. 65), **before** the case was appealed. She could have filed her jury demand at any point in time after that. Plaintiffs also fail to explain why they did not file their jury demand when they filed their Third Amended Complaint almost 2 years later on November 3, 2023 (D.I. 118), instead of choosing to wait until after Defendants filed their motion to dismiss Plaintiffs' new Counts and then choosing to further wait until after Defendants filed their Answer on July 31, 2024 (D.I. 133) to finally file their jury trial demand. (D.I. 134). Factor 4 weighs heavily against Plaintiffs.

With respect to Factor 5—the reasons for the failure to file a timely demand—Plaintiffs admit that when the only justification offered is inadvertence or oversight of counsel, courts typically deny relief, citing *Infinity*. (D.I. 147). Yet the only justification they offer is, again, that "from the outset [they] were effectively bound by the issue of whether they were contractually bound to arbitrate" and that once that issue was finally determined by the Third Circuit, they "promptly" filed their jury trial demand in compliance with Rule 38(b). (*Id*. at 15-16). As previously explained, however, this does not arise to even the level of inadvertence or oversight. That is because current counsel purport to speak for previous counsel when it appears that, having filed three Complaints, previous counsel deliberately intended a bench trial, since in none of them,

or in any other filing, did previous counsel ask for a jury trial. That Defendants raised the issue of the proper forum, which Plaintiffs contested, is no excuse for not having timely demanded a jury trial on the many occasions Plaintiffs' counsel could have done so.

And there was nothing "prompt" in how current counsel acted. Once current *pro hac vice* counsel took over the case back in January 2022, counsel did not file a jury trial demand until July 31, 2024, 2 ½ years later, and 9 months after counsel filed the Third Amended Complaint. Also, contrary to Plaintiffs' assertion, as already shown, the demand in fact was not timely under Rule 38(b). Factor 5 also weighs heavily against Plaintiffs. *Bill Darrah Builders, Inc. v. Hall at Makena Place, LLC*, No. CV 15-00518 JMS-KSC, 2017 WL 11139679, at *5 (D. Haw. Aug. 14, 2017) (where new counsel waited nearly nine months after their appearance to make a jury demand, Rule 39(b) relief denied).

Factors 1-3 also do not favor Plaintiffs. Applying Factor 1, the issues here are not particularly suitable for a jury. In *Infinity* itself, the Court found this factor to weigh against the party applying for Rule 39(b) relief, citing to a previous case where it had found the evidentiary facts were intricate and created difficult obstacles in the framing of a charge which would properly submit the issue of damages to a jury. 212 F.3d at 196. Here, similarly, the issues are likely to be numerous and involved.

This case revolves around a commercial undertaking between sophisticated parties that implicates operational structure and decision-making. Plaintiffs challenge a host of separate and independent business decisions that Defendants supposedly made or should have made over the course of the relationship that Plaintiffs claim were undertaken not for legitimate business reasons, but with an intent and design to circumvent payment of their Earn Out Consideration. Plaintiffs delineate a series of alleged job opportunities with respect to which Defendants allegedly

orchestrated or fostered competition from other subsidiaries that Plaintiffs believe were rightfully theirs or that of another subsidiary, TFC (whose EBITDA counted in calculating Plaintiffs Earn Out Consideration). (D.I. 118 at ¶¶ 31, 37-43, 47).

Understanding the issues requires an appreciation of how an integrated multi-faceted enterprise providing related products and services operates in Defendants' market space. Plaintiffs also challenge Defendants' actions in dealing with a potential litigation dispute with a company named Hydralube which had a non-compete agreement with TFC. (*Id*. at ¶ 33). Plaintiffs claim that this resulted in loss of potential revenue for IAS or TFC, but a jury must grasp the difference between Hydro System Cleaning jobs that Plaintiffs performed and the more sophisticated Electro-Hydraulic Control Systems (EHC) that the agreement actually affected. Another dispute involves Plaintiffs' claim of diversion of business opportunities to Hurt-Vet, a subcontractor with whom TFC worked. (*Id*. at ¶¶ 44-46). Resolving that dispute requires that the fact finder grasp how government set-asides for Service-Disabled Veteran Owned Small Businesses function. And there are many more such challenges that Plaintiffs raise.

Then there are also a host of issues that are accounting related. These include a claim that RelaDyne transferred substantially all the Acquired Assets of IAS, which Plaintiffs maintain consisted largely of good-will, by having Plaintiff sign employment agreements with RelaDyne rather than IAS, thereby supposedly triggering the maximal $5 M Earn Out provision of Section 2(f) of the APA. (*Id*. at ¶¶ 25-30). Another such claim involves a journal entry proximate in time to a transaction in which RelaDyne's ultimate parent was sold to another entity, which Plaintiffs maintain constituted a "write-off" of Earn Out reserve liability to Plaintiffs. (*Id.* at ¶¶ 32). Yet another claim by Plaintiffs is that Defendants were budgeting too low for Plaintiffs' success, thereby impeding their ability to achieve Earn Out Targets. (*Id*. at ¶¶ 48-49). And another, raised

in the proceedings before the Accounting Firm, is whether Defendants were improperly charging expenses to IAS and whether there should have been add-backs to calculated Earn Out.[2] Finally, depending on how these claims are resolved, Plaintiffs will have to present accounting evidence to determine exactly how any of the foregoing claims, if proven, affected the calculation of the EBITDA in relation to the Earn Out Targets, and by how much.

These matters were grist for the mill for the Accounting Firm (*see* D.I. 64-1, Accounting Firm's Decision Letter) and would readily be understood by a jurist but will be more difficult for a lay jury to grasp, thereby requiring more extensive explanation and greater reliance on expert testimony. See *New Creation Contact Lenses of Par, Inc. v. Continuous Curve Contact Lens, Inc.*, 100 F.R.D. 75, 78 (W.D. Ark. 1983) (denying Rule 39(b) motion where issues in breach of contract and wrongful inducement action were "technical and complicated" and would be difficult, if not impossible, to frame "in a manner to make them easily understandable by lay jurors who have no training in the law or other issues raised by the technical complaint filed").

Factor 1 therefore weighs against Plaintiffs. *Katzenmoyer v. City of Reading,* Civ. A. No. 00–CV-5574, 2001 WL 1175139, at *1 (E.D. Pa. Aug. 6, 2001) (refusing to grant Rule 39 relief because plaintiff failed to establish that issues in case were particularly suited to jury); *Cimildoro v. Metro. Prop. & Cas. Ins. Co.,* No. CIV.A. 09-1907, 2010 WL 891838, at *9 (E.D. Pa. Mar. 8, 2010) ("[A]lthough the issues presented in this case certainly can be heard by a jury, they can just as easily and readily be tried by the Court").

As for Factor 2, for the reasons stated above, granting Plaintiffs' motion would disrupt the schedule of the Court. The parties presented conflicting proposed Scheduling Orders, with

---

[2] All of these issues, which Plaintiffs raised during the course of the Accounting Firm's handling of the dispute over a period of about five months, are detailed in the Accounting Firm's Decision Letter dated December 17, 2021 (located in the record at D.I. 64-1).

Plaintiffs seeking a 5-day jury trial and Defendants seeking a 3-day bench trial. (D.I. 137). The Court opted to set this case for a 3-day jury or bench trial pending future motion practice on that issue. (*Id*.) But given the myriad matters that may need to be waded through by a fact finder as described above, and the logistics of choosing a jury, trying the case to the jury, and the likely need for expansive fact and expert testimony, a 3-day jury trial would not be possible. Such a trial would last a minimum of 5 days, if not more. This case does not merit that extensive of an expenditure of the parties' and the Court's time. In its Memorandum Opinion sending this case to arbitration, this Court noted the practicality that would be achieved in terms of a cost-benefit analysis:

> I note that the amount in dispute here was originally alleged to be $436,600.50. (D.I. 1 at 20). The lawsuit is now in its third venue, and I am sending the heart of it to a fourth. But the fourth venue (unlike the present venue) promises a quick and relatively inexpensive resolution . . . . A stay will lead to, at least, simplification; nothing of substance has occurred . . . .

(D.I. 55 at 10-11). While Plaintiffs are now getting a "do-over," these considerations remain just as applicable. A jury trial would disrupt the Court's scheduling, necessitating a trial longer than the 3 days that the Court, in its assessment, set aside. Factor 2 therefore also weighs against Plaintiffs. *Todd*, 2022 WL 17719698, at *5 (weighing this factor against movant because a jury trial would require considerably more resources and time than a bench trial).

As for Factor 3, ordering a jury trial will result in prejudice to Defendants. For the reasons stated above, Defendants will be exposed to higher costs and more resources expended in a jury trial that are hardly proportional given the amount in dispute. Courts have found prejudice where the parties could incur additional expenses to adequately prepare for trial. *Reis v. Barley, Snyder, Senft & Cohen LLC,* No. CIV.A. 05CV01651, 2008 WL 859238, at *6 (E.D. Pa. Mar. 27, 2008) ("Because of the complex issues involved in this case, defendants could reasonably determine that it did not have to present certain issues to the court by way of electronic media, blowups or

14

additional testimony, including additional expert testimony, because the court will be much more familiar than a jury would be with the factual and legal issues involved in the case."); *Gallardo v. Gulf South Pipeline Co., L.P.*, 2005 WL 14905, *3 (E.D. La. 2005) (increased costs to the opposing party sufficient prejudice to deny Rule 39 motion).

In sum, the *Infinity* five-factor test does not even come into play here because there is no showing that the failure to timely demand a jury trial was anything other than intentional by previous counsel. But even ignoring that, Plaintiffs fail each factor anyway. The 4 ½ year delay in making the jury trial demand is an unconscionably long period of time and longer than other delays that courts have found to be too long to grant a motion under Rule 39(b). The reasons offered by Plaintiffs for the failure to file a timely demand do not come near to being justifiable. The number and complexity of the issues make this a far more suitable case for a bench trial. A jury trial would disrupt the Court's scheduling, necessitating a trial longer than the 3 days the Court had set aside based on its assessment of the case. Finally, a jury trial would be prejudicial to Defendants, as Defendants will be exposed to longer time, higher costs, and more resources expended in a jury trial that are hardly proportional given the amount in dispute.

Plaintiffs' motion for an order directing a jury trial pursuant to Rule 39(b) should be denied.

### III. Conclusion

Based on the foregoing facts, arguments and authority, this Court should strike Plaintiffs' jury trial demand as untimely and therefore waived under Rule 38. The Court also should deny Plaintiffs' motion for an order directing a jury trial pursuant to Rule 39(b).

Dated:  October 28, 2024

**BARNES & THORNBURG LLP**

*/s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
Tel: (302) 300-3474
Fax: (302) 300-3456
chad.stover@btlaw.com

Edward D. Shapiro (*pro hac vice*)
Irving M. Geslewitz (*pro hac vice*)
**MUCH SHELIST, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Phone (312) 521-2414
Fax (312) 521-2314
eshapiro@muchlaw.com
igeslewitz@muchlaw.com

*Attorneys for Defendants*

16